[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
02/24/2000
THOMAS K. KAHN
CLERK

No. 98-4787

D.C. Docket No. 97-3611-Civ-JAL

CHERYL COHEN, on behalf of herself and
others similarly situated,

Plaintiff - Appellant,

versus

OFFICE DEPOT, INC., a Florida corporation,

Defendant - Appellee.

Appeal from the United States District Court
for the Southern District of Florida

**(February 24, 2000)**

ON PETITION FOR REHEARING AND
SUGGESTION OF REHEARING EN BANC

Before BIRCH and CARNES, Circuit Judges, and MILLS*, Senior District Judge.

_____
*Honorable Richard Mills, Senior U.S. District Judge for the Central District of Illinois, sitting by designation.

CARNES, Circuit Judge:

In our prior opinion in this case, we held that Florida Statute § 768.72 conflicts with and must yield to the "short and plain statement" rule contained in Federal Rule of Civil Procedure 8(a)(3), and as a result a Florida plaintiff in federal court because of diversity jurisdiction need not obtain leave of court before pleading a request for punitive damages. Cohen v. Office Depot Inc., 184 F.3d 1292, 1295 - 99 (11th Cir. 1999) ("Cohen I"). We adhere to and leave that part of our earlier opinion intact.[1]

Relying on Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1358-59 (11th Cir. 1996), we also held that "in a class action lawsuit punitive damages may be aggregated to satisfy the amount-in-controversy requirement for each class member," at least "where state law provides that an award of punitive damages is for the 'public benefit' or 'collective good,' and the award would reflect 'the wrongfulness of the defendant's course of conduct as a whole.'" Cohen I, 184 F.3d at 1295 (quoting Tapscott, 77 F.3d at 1358). Combining our two holdings, we concluded that the complaint satisfied the amount in controversy requirement because it requested $10,000,000 in punitive damages for the entire class of approximately 39,000 Office Depot catalogue customers. See id. at 1299.

---

[1] For a full recitation of the relevant facts of this case, see Cohen I, 184 F.3d at 1293-94.

In its petition for rehearing, Office Depot has belatedly pointed out the tension between the <u>Tapscott</u> decision, on which we relied in our earlier opinion in this case, and the decision in <u>Lindsey v. Alabama Telephone Co.</u>, 576 F.2d 593 (5th Cir. 1978). Of course, pre-split or "Old Fifth" decisions such as <u>Lindsey</u> are binding on us, <u>see</u> <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981), and where two prior panel decisions conflict we are bound to follow the oldest one. <u>See</u> <u>United States v. Steele</u>, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc) ("It is the firmly established rule of this circuit that each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court.") (internal quotation marks and citation omitted); <u>United States v. Dailey</u>, 24 F.3d 1323, 1327 (11th Cir. 1994) (where there is an intracircuit conflict of authority, "the earliest panel opinion resolving the issue in question binds this circuit until the court resolves the issue en banc") (internal quotation marks and citation omitted).

For reasons we will soon discuss, we conclude that <u>Tapscott</u>'s holding about aggregation of punitive damages is inconsistent with the earlier holding on the same legal issue in <u>Lindsey</u>, and accordingly we must follow <u>Lindsey</u>. Doing so, we conclude that the total of $10,000,000 in punitive damages that was pleaded for the class of 39,000 members in this case is insufficient to satisfy the $75,000

3

amount in controversy requirement.  This conclusion requires us to address

plaintiff, class-representative Cohen's remaining arguments involving alternative

theories for satisfying the amount in controversy requirement, which are that it is

satisfied because of the value of the requested injunctive relief, and because of the

amount of attorney fees due if the class prevails.  We will discuss those issues in a

later part of this opinion, but we begin with a discussion of the inconsistency of

Tapscott (and our own prior opinion following it) with Lindsey.

## I.  THE CONFLICT BETWEEN LINDSEY AND TAPSCOTT REGARDING AGGREGATION OF PUNITIVE DAMAGES

To avoid adding confusion to conflict, we first explain why referring to the

"aggregation" of punitive damages in the context of a class action can be a bit

misleading.  In this case, as in Lindsey and Tapscott, the punitive damages claim is

a single claim on behalf of the entire class; it is not the sum total of 39,000

individual punitive damages claims.  Because each class member could have

sought punitive damages in individual suits, courts sometimes phrase the question

as whether a class claim for punitive damages can be "aggregated"  to satisfy the

jurisdictional amount in controversy requirement for a class.  The question,

however, is not whether distinct punitive damages claims can be added together,

but instead it is whether the single punitive damage claim on behalf of the class can

be attributed in toto to each and every class member so they can individually

4

satisfy the requisite amount in controversy, a requirement mandated by <u>Zahn v. International Paper Co.</u>, 414 U.S. 291, 94 S. Ct. 505 (1973).[2]  If the single punitive damages claim cannot be attributed as a whole to each class member, it must be allocated or divided <u>pro rata</u> among the class members, and after that is done the total amount of relief sought by each plaintiff must satisfy the jurisdictional amount.  With that clarification of the question, we turn to the conflicting answers of <u>Lindsey</u> and <u>Tapscott</u>.[3]

<u>Lindsey</u> involved a state law class action suit against two telephone companies alleged to have unlawfully extracted excessive cash deposits from the class.  See <u>Lindsey</u>, 576 F.2d at 593.  The defendants removed the case to federal court on diversity grounds.  See <u>id.</u> at 593-94.  The complaint, as construed by the Court, sought: (1) $2,000 compensatory damages for Lindsey, (2) an unspecified sum of compensatory damages for the class, which contained an unspecified

---

[2] Cohen argues that <u>Zahn</u>'s holding requiring dismissal from a class suit of any plaintiff whose individual claim does not satisfy the amount in controversy requirement has been superseded by the 1990 amendments to 28 U.S.C. § 1367.  As will be discussed, we need not decide that issue to resolve the present case.  See <u>infra</u> note 13.

[3] Although the term "aggregation" is slightly misleading in the context of punitive damages and attorneys fees, it is commonly used by courts when addressing the issue of whether the total amount of a class claim should be attributed to each member of the class.  Therefore, to avoid further confusion and for the sake of consistency, we will continue to refer to the issue as one of "aggregation."

number of plaintiffs, and (3) $1,000,000 punitive damages on behalf of the class. See id. at 595.

The Lindsey Court began its analysis by citing Snyder v. Harris, 394 U.S. 332, 89 S. Ct. 1053 (1969), for the broad proposition that multiple plaintiffs suing in a class may not aggregate any claims for the purpose of satisfying the amount in controversy requirement of diversity jurisdiction. Lindsey, 576 F.2d at 594. The Court then noted that each member of a class must individually satisfy the jurisdictional amount to avoid being dismissed from the class suit. See id. (citing Zahn, 414 U.S. at 300, 94 S. Ct. at 511). Because the Lindsey plaintiff had failed to plead a specific number of class members, the Court explained that it could not determine "what dollar amount represent[ed] the 'amount in controversy' for each member of the class." Id. at 595 (emphasis added). Noting that the grounds for removal jurisdiction must be found in the plaintiff's complaint itself, the Court explained that "it was not open for [the] defendants to attempt to show that the class was small enough that the claims on its behalf exceeded the sum of $10,000 per capita," id., which was the amount in controversy requirement at that time, see id. at 593.

Because it could not tell from the complaint the number of class members, the Lindsey Court could not determine whether each member's claim satisfied the

jurisdictional amount, and it therefore held that the total specified damage claim for the class – $1,002,000 – had not been shown to satisfy the amount in controversy requirement. See id. at 595. A necessary part of Lindsey's reasoning is the holding that for amount in controversy purposes a class punitive damages claim must be allocated pro rata to each class member. Otherwise, the result in that case would have been different. If the Lindsey Court had concluded that a class claim for punitive damages could be attributed in toto to each class member, i.e., considered in the aggregate, for amount in controversy purposes, the $1,000,000 punitive damages claim clearly would have sufficed, regardless of whether the number of class members in Lindsey had been two or two million. The number of class members would have been irrelevant, instead of the critical factor in the decision. Thus, Lindsey inescapably stands for the proposition that a federal court cannot exercise diversity jurisdiction over a class action – even with completely diverse parties – solely because the total punitive damages claim on behalf of the entire class exceeds the jurisdictional amount in controversy. Instead, under Lindsey, the punitive damages claim for the class must be assigned on a pro rata basis to each class member for amount in controversy purposes. See id.

Three years after Lindsey, we split from the Fifth Circuit but retained its decisional law as our own, see Bonner, 661 F.2d at 1207, and fifteen years after the

7

split, this Court decided <u>Tapscott v. MS Dealer Serv. Corp.</u> In that case, we faced another attempt to base diversity jurisdiction on a class claim for punitive damages, but we mistakenly considered the matter as one of first impression.[4] <u>See Tapscott</u>, 77 F.3d at 1358. The plaintiffs in <u>Tapscott</u> brought a state law class action, alleging a class of over 10,000 members. <u>See id.</u> at 1355 n.2. The class sought statutory damages, injunctive relief, and an unspecified amount of compensatory and punitive damages, based on the defendant's allegedly fraudulent conduct in the sale of extended service contracts. <u>See id.</u> at 1355. The defendants removed the case to federal court on diversity jurisdiction grounds. <u>See id.</u> The plaintiffs contested the removal with affidavits attesting that the individual recovery for each plaintiff would not exceed $50,000, the amount in controversy required for diversity jurisdiction at the time. <u>See id.</u> The defendants responded that, for jurisdictional purposes, the class claim for punitive damages should be considered in the aggregate. <u>See id.</u> at 1357-59. We agreed and upheld the removal of the case to federal court. <u>See id.</u> at 1359.

---

[4] The <u>Tapscott</u> opinion cites <u>Lindsey</u> for the proposition that each member of a class must individually satisfy the amount in controversy requirement in order to avoid being dismissed from the suit. <u>See Tapscott</u>, 77 F.3d at 1357 n.9. But the opinion does not mention the part of <u>Lindsey</u> that requires a <u>pro rata</u> distribution of the claimed punitive damages for purposes of determining the amount in controversy.

In Tapscott, this Court pointed to the Supreme Court's discussion in Snyder, which indicated that multiple plaintiffs may aggregate claims if they have "a single title or right in which they have a common and undivided interest." Id. at 1357 (quoting Snyder, 394 U.S. at 335, 89 S. Ct. at 1056). We then considered the nature of punitive damages under Alabama law, finding that Alabama awards punitive damages to plaintiffs not "as a matter of right," but rather as a means to punish and deter wrongful conduct. See id. at 1358. Because punitive damages were intended to serve the collective good, we reasoned that the class had a "common and undivided interest" in the punitive damages claim. See id. at 1358-59. That is why this Court in Tapscott permitted the punitive damages claim to be used to satisfy the requisite amount in controversy for the entire class; in effect, we let the whole amount of the punitive damages claim be used by each class member for that purpose, a result inconsistent with the decision in Lindsey almost twenty years earlier. See id. at 1359.

Attempting to distinguish Tapscott from Lindsey, Cohen points to the analysis in Tapscott addressing whether the punitive damages claim constituted a "single collective right in which [the class members had] a common and undivided interest." Id. She contends that the "common and undivided interest" issue was never presented to us in Lindsey, and thus, there is no real conflict between our

9

Lindsey and Tapscott decisions. Cohen's contention misconstrues the operation of our prior panel precedent rule. The issue in Tapscott was the same as that in Lindsey: whether a class claim for punitive damages can be considered in the aggregate in order to establish diversity jurisdiction over all potential members of a class, or must instead be attributed pro rata to each class member.

"Common and undivided interest" is simply the standard used to decide which, if any, claims by multiple plaintiffs may be considered in the aggregate for jurisdictional purposes, and which must be divided among the class members. See Snyder, 394 U.S. at 335, 89 S. Ct. at 1056. But we had already decided in Lindsey that a class claim for punitive damages could not be considered in the aggregate for each class member, or at least that such a claim arising under Alabama law could not be. Our conclusion to the contrary in Tapscott, which also involved Alabama punitive damages law, is inconsistent with the result in Lindsey. Because the same state law governed punitive damages in each case, there can be no difference between the two cases insofar as the "common and undivided interest" analysis is concerned.[5]

---

[5] Compare Allen v. R & H Oil & Gas Co., 63 F.3d 1326 (5th Cir. 1995) (allowing aggregated class claim for punitive damages because, under Mississippi law, plaintiffs had a "common and undivided interest" in punitive damages claim), with Ard v. Transcontinental Gas Pipe Line Corp., 138 F.3d 596, 602 (5th Cir. 1998) (disallowing aggregated class claim for punitive damages in Louisiana case and stating that "[i]t is unclear to us what Mississippi law regarding punitive damages drove the Allen panel to depart from Lindsey's rule, but we find no principle in Louisiana

The fact that this case involves a Florida law punitive damages claim does not distinguish it from <u>Lindsey</u>, because as we concluded in our prior panel opinion in this case, the nature of punitive damages is the same under Florida law as under Alabama law. <u>See</u> <u>Cohen I</u>, 184 F.3d at 1295. We explained that both states award punitive damages to serve the collective good, noting particularly that "Florida law, like Alabama law, provides that 'punitive damages are warranted only where the egregious wrongdoing of the defendant ... constitutes a public wrong.'" <u>Id.</u> (citation omitted). Consequently, there can be no difference between this case and <u>Lindsey</u> stemming from a "common and undivided interest" analysis of state punitive damages law.[6]

_____

law ... that permits us to depart from <u>Lindsey</u>").

[6] As we noted in our prior opinion in this case, our decision in <u>Tapscott</u> to consider the class punitive damages claim in the aggregate was also based on the fact that "the award of punitive damages [would] reflect not the wrong done to any single individual but the wrongfulness of the conduct as a whole." <u>See</u> <u>Cohen I</u>, 184 F.3d at 1295 (<u>citing</u> <u>Tapscott</u>, 77 F.3d at 1358-59)). The class in that case consisted of over 10,000 members, and the allegedly fraudulent transaction underlying each member's claim involved relatively small amounts of money. <u>See</u> <u>Tapscott</u>, 77 F.3d at 1358-59. Reasoning that "where the wrong to the individual is small but the course of conduct is large, the potential punitive damages would be to punish and deter the course of conduct as a whole," we concluded in <u>Tapscott</u> that it was appropriate to view the class claim for punitive damages in the aggregate. <u>Id.</u> at 1359. We also suggested that if the facts indicated the punitive damages award "would be determined on an individualized consideration of the egregiousness of the harm done to individual class members," <u>id.</u> at 1359 n.13, instead of the "wrongfulness of the defendant's course of conduct as a whole," <u>id.</u> at 1358, then aggregation might not be proper. <u>See</u> <u>id.</u> at 1359 n.13. In view of this analysis in <u>Tapscott</u>, the <u>Lindsey</u> decision arguably could be viewed as holding only this: when a plaintiff fails to specify the size of the class, thereby preventing the court from determining the extent of the defendant's wrongful course of conduct, the class claim for punitive damages cannot be viewed in the "aggregate," <u>i.e.</u>, it cannot be attributed <u>in toto</u> to each class member.

11

Cohen's real argument is that the result and holding of <u>Lindsey</u> are wrong because we failed to apply a "common and undivided interest" analysis – she says it was not even considered. Even if we thought <u>Lindsey</u> wrong, the prior panel precedent rule is not dependent upon a subsequent panel's appraisal of the initial decision's correctness. Nor is the operation of the rule dependent upon the skill of the attorneys or wisdom of the judges involved with the prior decision – upon what

---

Unfortunately, our analysis in <u>Lindsey</u> forecloses that potential distinction between that case and <u>Tapscott</u>. In <u>Lindsey</u>, we stated that if the plaintiff had alleged a specific number of class members, that allegation "would have permitted the court to ascertain <u>what</u> <u>dollar</u> <u>amount</u> <u>represents</u> <u>the 'amount in controversy' for each member of the class</u>." <u>Lindsey</u>, 576 F.2d at 595 (emphasis added). Significantly, our analysis in <u>Tapscott</u> suggests that the aggregation of punitive damages is proper when the defendant's course of conduct affects a large number of individuals. <u>See</u> <u>Tapscott</u>, 77 F.3d at 1359. But according to our prior analysis in <u>Lindsey</u>, a "large" class is exactly what would have prevented the amount in controversy requirement from being satisfied. Our concern in <u>Lindsey</u> was that the number of class members, or the divisor, might be so large that the $1,000,000 punitive damages claim, when divided by the number of class members, would result in an amount less than $10,000 (the requisite amount in controversy at the time). We indicated in <u>Lindsey</u> that the class would satisfy the amount in controversy requirement if the complaint alleged a total number of members that "was <u>small</u> <u>enough</u> that the claims on its behalf exceeded the sum of $10,000 <u>per</u> <u>capita</u>." <u>Lindsey</u>, 576 F.2d at 595 (emphasis added). Thus, while our opinion in <u>Lindsey</u> does not explicitly forbid the aggregation of a class claim for punitive damages, the reasoning and result in that opinion does.

Under our reasoning in <u>Lindsey</u>, a punitive damages claim must be divided by the total number of class members with the quotient attributable to each class member for amount in controversy purposes. <u>See</u> <u>id.</u> Our inability to determine the number of class members, or the divisor, was critical not because we could not determine the nature of the defendants' course of conduct, but because without a divisor we could not do the division necessary. We could not divide the class punitive damages claim by the number of class members without knowing that number. A Fifth Circuit panel recently acknowledged the necessary implication of our <u>Lindsey</u> decision. <u>See</u> <u>Ard</u>, 138 F.3d at 601 (construing <u>Lindsey</u> to "appl[y] <u>Snyder</u>'s reasoning that compensatory damage claims cannot be aggregated for jurisdictional purposes to the context of punitive damage claims"); <u>see</u> <u>supra</u> at note 6.

12

was argued or considered.  Unless and until the holding of a prior decision is overruled by the Supreme Court or by the en banc court, that holding is the law of this Circuit regardless of what might have happened had other arguments been made to the panel that decided the issue first.

Lindsey held that, for purposes of deciding whether the amount in controversy requirement had been satisfied, the amount of an Alabama punitive damages claim was to be divided by the number of class members and the result attributed to each member of the class.  Tapscott decided to the contrary.  Because Lindsey predates Tapscott, we must follow Lindsey as the precedent of this Court.  See Steele, 147 F.3d at 1318; Dailey, 24 F.3d at 1327.

Accordingly, we rescind that part of our prior opinion in this case that relied upon Tapscott to hold that the $10,000,000 punitive damages claim on behalf of Cohen's proposed class satisfied the amount in controversy requirement for diversity jurisdiction over this case.  See Cohen I, 184 F.3d at 1294-95.  The punitive damages claim does not satisfy the amount in controversy requirement, because when the $10,000,000 class claim for punitive damages is divided among the alleged 39,000 class members, as Lindsey requires for amount in controversy purposes, each member's share of the claim is approximately $256.

13

We now address Cohen's other two grounds for satisfying the requisite amount-in-controversy: (1) the value of the requested injunctive relief, and (2) the amount of attorney fees due if the class prevails.

## II.  COHEN'S OTHER GROUNDS FOR DIVERSITY JURISDICTION

### A.  INJUNCTIVE RELIEF

In addition to requesting compensatory and punitive damages, this lawsuit seeks to enjoin Office Depot from engaging in unfair and misleading advertising regarding the catalogue prices of its products.  Cohen claims that Office Depot's advertising indicates that the prices for products purchased from its catalogues are the lowest prices available anywhere, but that the truth is some products are less expensive if purchased at Office Depot stores.   She argues that enjoining such allegedly misleading advertising would  "result[] in changes to Office Depot's advertising and business practices, thereby benefitting the Plaintiff class, as a whole, by an amount that is clearly in excess of the jurisdictional requirement of Section 1332."   Appellant's Br. 44-45.

When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective.  See Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Elecs., Inc., 120 F.3d 216, 218-20 (11th Cir. 1997).  In other

words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted. In this case, Cohen maintains that the class has a "common and undivided interest" in the injunctive relief, and thus, if considered in the aggregate, the monetary value of it to the class – alone or combined with the other claims for relief – would satisfy the $75,000 amount in controversy requirement. However, we need not address whether the monetary value of the requested injunctive relief should be considered in the aggregate, or instead attributed pro rata among the class members, because we conclude that the monetary value of the injunctive relief to the class plaintiffs in this case is "too speculative and immeasurable" to establish the requisite amount in controversy in either event. See id. at 221-222.

We have little trouble concluding "to a legal certainty" that the value of the injunctive relief does not satisfy the jurisdictional amount in this case, see St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89, 58 S. Ct. 586, 590 (1938), because we doubt that any monetary value at all would accrue to the class plaintiffs upon issuance of the prospective injunction. If the requested injunctive relief were granted, Office Depot would not be required to offer its products at the lowest price available, but instead could simply raise the price of the products in its stores a sufficient amount that its advertising of catalogue prices was no longer

15

false. That result would comply with the injunction the class seeks, but it would be of no monetary benefit to them. Indeed, to the extent class members also buy products in Office Depot stores, the injunction would cost them money under that scenario.

But let us assume Office Depot's reaction to the requested injunction would be to leave product prices as they are and clarify its advertising to remove any statement that catalogue prices are the same as store prices. That result is the most the class could hope for from the requested injunction, but it is one which would be of little or no monetary value to class members. The benefit of the injunction to the class plaintiffs would be the knowledge that some office products were less expensive when purchased at Office Depot stores than when purchased through the catalogue. However, upon class certification and notice, the class plaintiffs would already have known that, because the allegedly misleading advertising is the very basis of the class action.

Although Cohen's complaint seeks class certification under subdivisions (b)(1)(A), (b)(1)(B), and (b)(3) of Fed. R. Civ. P. 23, Cohen's class, if certified, would likely be certified as a (b)(3) class.[7] Certification under Rule 23(b)(3)

---

[7] Because Cohen's class seeks compensatory damages, it cannot be certified as a (b)(1)(A) class. See In re Dennis Greenman Sec. Litig., 829 F.2d 1539, 1545 (11th Cir. 1987). As for potential certification under (b)(1)(B), we fail to see from the complaint's allegations how individual suits against Office Depot brought by one or more class members "would as a practical matter be

16

would require that the class members receive notice of the suit "well <u>before</u> the merits of [it] are adjudicated." <u>See</u> <u>Schwarzschild v. Tse</u>, 69 F.3d 293, 295 (9th Cir. 1995) (citations omitted); Fed. R. Civ. P. 23(c)(2); <u>see</u> <u>also</u> 7B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1788 (2nd ed. 1986). As a result, before any injunction were granted, the class would already know that the catalogue price of some Office Depot products is higher than the store price. Or, stated differently, if the injunction were not granted, the class plaintiffs would still know that the advertising is sometimes false and that they can avoid paying the higher catalogue prices simply by shopping elsewhere or by purchasing the products at Office Depot's stores. The injunctive relief itself would not be of any monetary value to the class members. <u>Cf.</u> <u>Crawford v. American Bankers Ins. Co. of Fla.</u>, 987 F. Supp. 1408, 1415 (M.D. Ala. 1997) (explaining that the class members' "financial recovery will come ... from their tort and [restitution] claims, not from the prospective injunctive relief").

---

dispositive of the interests of the other members ... or substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B); <u>see also</u> 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1774 (2nd ed. 1986) (explaining that "(b)(1)(B) allows class actions to be brought in cases in which separate suits might have undesirable effects on the class members"). Moreover, the possibility that an individual suit "will have either precedential or stare decisis effect on later [suits] is not sufficient" for (b)(1)(B) class certification. <u>In re Dennis Greenman Sec. Litig.</u>, 829 F.2d at 1546.

The remote possibility – if there be any – that monetary value might somehow flow to the class plaintiffs from the requested injunctive relief is "too speculative and immeasurable to satisfy the amount in controversy requirement." Ericsson, 120 F.3d at 221-222. In Ericsson, the plaintiff company, Ericsson, claimed that the City of Birmingham improperly handled the bidding process for its purchase of a communications system, resulting in the company losing the communications system contract to Motorola. See id. at 217. Ericsson sought to enjoin the city's contract with Motorola and also to have the court declare Ericsson the lowest responsible bidder, entitling it to the contract with the city worth almost $10,000,000. See id. However, the district court noted that, under Alabama law, the only remedy available to Ericsson was to have the district court enjoin the performance of the city's contract with Motorola as void. See id. at 221. Not only did the court lack authority to declare Ericsson the lowest bidder, it could not even require the city to rebid the contract. See id.

Consequently, the only benefit to Ericsson from its injunctive relief would have been the possibility that the city might rebid the contract and that, during the rebid, the city might select Ericsson's communications system and price. See id. at 221-22. We refused to pile possibility onto possibility to estimate the value of that benefit, but instead held that "[b]ecause [Ericsson could not] reduce the speculative

18

benefit resulting from a rebid 'to a monetary standard, [] there [was] no pecuniary amount in controversy.'" Id. at 222 (quoting Texas Acorn v. Texas Area 5 Health Sys. Agency, Inc. 559 F.2d 1019, 1023 (5th Cir. 1977)).

Similarly, the injunctive relief in this case involves too many contingencies, such as the manner in which Office Depot might alter its pricing schemes and the extent to which the class members' purchasing patterns might change. Because of these contingencies, any benefit to the class from the injunction cannot be reduced to a reasonable monetary estimate.[8] See id. at 222. We therefore conclude that any monetary value to Cohen's class from the injunction is either non-existent, or at least too tenuous of a foundation for diversity jurisdiction. In reaching this conclusion, we also note that the policy underlying 28 U.S.C. § 1332(a), which is to reserve federal court diversity jurisdiction for disputes involving relatively substantial damages, further informs our refusal to speculate about the value of a

---

[8] Like the plaintiff in Ericsson, Cohen has not established a monetary value for the injunctive relief claim. See id. at 222 n.18. Cohen argues that her proposed amended complaints provide bases for valuing the injunctive relief claim, primarily the substantial expense Office Depot would incur by "retooling" its pricing scheme and advertising. The potential cost of compliance to the defendant, however, is irrelevant in determining the value of the benefit that would be obtained by the plaintiff from an injunction. See Ericsson, 120 F.3d at 218-20. For that reason, the proposed amended complaint did not establish the requisite amount in controversy based on the value of the injunctive relief, and accordingly, the district court did not abuse its discretion in denying leave to amend. See Halliburton & Assocs., Inc. v. Henderson, Few & Co., 774 F.2d 441, 444 (11th Cir. 1985) (noting that when "a complaint as amended is still subject to dismissal, leave to amend need not be given") (citation omitted).

prospective injunction to the class plaintiffs in this case. See Packard v. Provident

Nat'l Bank, 994 F.2d 1039, 1044-45 (3rd. Cir. 1993) (noting that § 1332(a) "must

be narrowly construed so as not to frustrate the congressional purpose behind it").

The total compensatory and punitive damages claim for each class member in this

case is about $260,[9] well below the $75,000 threshold for diversity jurisdiction.

Because the class claim for injunctive relief is too speculative to satisfy the

amount in controversy requirement, we turn now to the question of whether the

potential recovery of attorney fees, alone or in combination with the damages

claims, can establish the jurisdictional amount in controversy.

## B. ATTORNEY FEES

On behalf of the class, Cohen brought claims under Florida statutes that

prohibit deceptive business practices, see Fla. Stat. § 501.201 et seq., and

misleading advertising, see Fla. Stat. § 817.41. Both statutory causes of action

authorize a court to award attorney fees to the prevailing party. See Fla. Stat. §

501.2105; Fla. Stat. § 817.41. Cohen contends that when a statutory cause of

---

[9] While there are persuasive reasons for viewing the amount in controversy as the total liability faced by a defendant, instead of as the amount each plaintiff stands to gain, "the Supreme Court has long since closed that door." Davis v. Carl Cannon Chevrolet-Olds, Inc., 182 F.3d 792, 798 (11th Cir. 1999). In this case, the approximate compensatory damages claim of each member, assuming Cohen's claim is representative of the other class members, is $3.57. Each member's share of the punitive damages claim is approximately $256. The total damages claim of each class member, therefore, is less than $260.

action entitles a party to recover reasonable attorney fees, the amount in controversy includes consideration of the amount of those fees. She is correct. See Missouri State Life Ins. Co. v. Jones, 290 U.S. 199, 202, 54 S. Ct. 133, 134 (1933); Premier Indus. Corp. v. Texas Indus. Fastener Co., 450 F.2d 444, 447 (5th Cir. 1971).

Cohen also contends that the attorney fees in this case will clearly surpass the $75,000 threshold for the amount in controversy; and she argues that the amount of fees she anticipates will be awarded either should be (1) attributed to her as the prevailing party, with jurisdiction over the other class plaintiffs established under 28 U.S.C. § 1367(a) (the supplemental jurisdiction provision), or (2) considered in the aggregate and attributed in toto to each member based on their "common and undivided interest" in the attorney fees. Assuming away our doubts that Cohen has established a sufficient basis for her contention that an award of

attorney fees in this case will reach $75,000 or more,[10] we address in turn her

arguments as to how that amount of fees should be attributed.

First, we find no basis for attributing the potential award of attorney fees to

Cohen, either individually or as the class representative. The claim for attorney

fees in this case is based on two Florida statutes: Fla. Stat. § 501.2105(1),

authorizing an award of attorney fees to "the prevailing party" in an action based

on deceptive business practices;  and Fla. Stat. § 817.41(6), mandating an award of

attorney fees to "[a]ny person prevailing" in an action based on misleading

advertising. If this class action were successful on the merits, the entire class of

plaintiffs – not just Cohen – would "prevail" in the action, and accordingly, it is the

class and not just Cohen who would recover attorney fees under the statutes.[11]

---

[10] We doubt that Cohen has sufficiently established that $75,000 in attorneys fees will be recovered in this case. In her proposed amended complaint, Cohen contends that over $60,000 in reasonable attorneys fees had been incurred up to that point in the litigation and that ultimately over $100,000 in fees would be incurred. However, Cohen provided no documentation supporting those contentions or specific explanation for the substantial amount claimed. Arguably, when the amount in controversy substantially depends on a claim for attorneys fees, that claim should receive heightened scrutiny. Cf. Packard, 994 F.2d at 1046 (explaining that when a "[punitive damages] claim comprises the bulk of the amount in controversy and may have been colorably asserted solely or primarily [for jurisdictional purposes], that claim should be given particularly close scrutiny"). However, because of the permissive nature of St. Paul's "legal certainty" standard for the sufficiency of a plaintiff's amount in controversy allegation, and because our decision would not be different even if the claimed amount of fees were accurate, we will assume that Cohen has alleged a sufficient basis for a potential attorneys fee award exceeding $100,000, as estimated in her proposed amended complaint.

[11] Cohen's citation to In re Abbot Labs., 51 F.3d 524 (5th Cir. 1995), is inapposite. The Court in that case attributed a claim for attorney fees to the class representatives, because the relevant Louisiana statute provided that a "court may allow the representative parties their reasonable

22

In addition, as an individual class member, Cohen stands to recover no more than $260 in damages. In her first proposed amended complaint, Cohen indicated that over $100,000 in reasonable attorney fees would be incurred in the litigation. Attributing to one plaintiff an anticipated attorney fees award that is over 384 times greater than that plaintiff's stake in the litigation could raise serious questions about the reasonableness of the fee award. For these reasons, we conclude the claim for attorney fees in this case is not attributable solely to Cohen, but instead to the entire class. Because of that conclusion, we must now decide how the claimed attorney fees should be attributed to each class member for amount in controversy purposes.[12]

---

expenses of litigation, including attorney[] fees, when as a result of the class action a fund is made available, or a recovery or compromise is had which is beneficial, to the class." Id. at 526 (emphasis added). Unlike the statute in Abbott, the Florida statutes at issue here do not contain language indicating that the award of attorneys fees should go to the class representatives.

[12] Cohen asks us to join the Fifth and Seventh Circuits in concluding that Congress statutorily overruled Zahn's holding that each plaintiff must assert a claim satisfying the requisite amount in controversy to avoid being dismissed from a class action based on diversity jurisdiction. See Stromberg Metal Works v. Press Mechanical, Inc., 77 F.3d 928, 930-33 (7th Cir. 1996); In re Abbott Lab., 51 F.3d at 527-29. She contends that the 1990 amendments to 28 U.S.C. § 1367 authorize a court to exercise supplemental jurisdiction over the claims of the entire class, once the claim of one class member is found to satisfy the amount the controversy requirement. However, we need not address that argument. Because the claimed attorney fees in this case are not attributable solely to Cohen, no member of the class has an individual claim that satisfies the requisite amount in controversy. Therefore, diversity jurisdiction will exist in this case only if the claimed attorney fees may be considered in the aggregate, attributed as a whole to each class member.

23

Cohen maintains that the class members share a "common and undivided interest" in the anticipated award of attorney fees, and thus, the claim for those fees should be viewed in the aggregate, with the total amount attributed to each class member. Office Depot responds that, like the class claim for punitive damages, the amount of the claimed attorney fees should be divided pro rata among each individual class member. In light of a recent decision by this Circuit and the relevant Florida case law, we conclude that the claim for attorney fees is not "a single title or right in which [the class members] have a common and undivided interest" in the claimed attorney fees. See Snyder, 394 U.S. at 335, 89 S. Ct. at 1056. Therefore, for amount in controversy purposes, the estimated total attorney fees award should be divided among all of the class members.

In Darden v. Ford Consumer Finance Co., ___ F.3d ___ (11th Cir. 2000), the defendant attempted to remove a class action to federal court on diversity grounds, arguing that the class plaintiffs' claim for attorney fees under the Georgia RICO statute should be considered in the aggregate for amount in controversy purposes. We rejected that argument. Following the principles laid down by the Supreme Court in Snyder, we concluded that the claimed attorney fees did not constitute a "single title or right" in which the class members had a "common and undivided interest." See id. at *3-6. In reaching that conclusion, we noted that each class

24

plaintiff could have recovered his attorney fees in individual suits under the RICO statute. See id. at *5. It followed that the class members did not share a "single title or right" in the claimed attorney fees, but instead, each member had a "separate and distinct statutory right or claim to recover those attorney[] fees." Id. Noting further that under Georgia law the statutory award of attorney fees serves to compensate injured plaintiffs, we reasoned that considering the fees in the aggregate would contravene Snyder's prohibition against aggregating compensatory damages.[13] See id. Therefore, we refused to aggregate the claimed attorney fees of the class.[14]

We construe Darden to hold that a statutory claim for attorney fees may not be considered in the aggregate for amount in controversy purposes, at least not when both of these factors are present: (1) the class members have a "separate and distinct" right to recover attorney fees under the relevant statute; and (2) state law

---

[13] Darden distinguished the "collective good" purposes of the punitive damages in Tapscott from the compensatory nature of the attorneys fees in that case. See Darden. Therefore, the decision in Darden did not depend on the continued validity of the Tapscott decision. However, if Darden had somehow reiterated the part of Tapscott that conflicts with Lindsey, we would still be compelled to follow Lindsey, to the extent of any conflict. The prior panel precedent rule precludes us from "hold[ing] that two subsequent panel opinions can implicitly overrule a prior panel opinion." Johnson v. City of Fort Lauderdale, Fla., 126 F.3d 1372, 1380 n. 10 (11th Cir. 1997).

[14] This Court also rejected the aggregation of an attorney fees award in Davis, 182 F.3d at 796-97. However, the precedential effect of Davis on this case is minimal, because that case did not involve a statutory right to attorneys fees. Instead, Davis addressed only the "narrow question ... [of] whether a fee to be deducted from a [class action] common fund may, if it exceeds $75,000, satisfy the amount-in-controversy requirement." Id. at 796.

provides that the statutory attorney fees serve to compensate the class members for their injuries.[15] Applying that holding to the facts of this case, we conclude that the claimed attorney fees may not be considered in the aggregate to establish the requisite amount in controversy.

As for the first factor, the class members in this case could recover their individual attorney fees incurred in separate, individual suits under Florida's consumer protection statutes. See Fla. Stat. § 501.2105(1) (authorizing fee award for "prevailing party"); Fla. Stat. § 817.41(6) (mandating fee award for "[a]ny person prevailing" under the statute). Like the Georgia RICO statute involved in Darden, the Florida statutes in this case provide "each individual plaintiff in a putative class the right to recover attorney[] fees in the case." Darden, The members of Cohen's class are not joining to "enforce a single title or right" in the statutory award of attorney fees, see Syder, 394 U.S. at 335, 89 S. Ct. at 1056, because each member has a "separate and distinct right" in the claimed fees. See Darden.

The second factor is also present. Like the attorney fees award under the Georgia RICO statute in Darden, an attorney fees award under Florida consumer

---

[15] Because both factors are present in this case, we need not decide whether either one standing alone would prevent aggregation of attorney fees to satisfy the amount in controversy.

protection statutes serves an important compensatory purpose. In BMW of North Amer., Inc. v. Krathen, 510 So.2d 366, 368 (Fla. 4th Dist. Ct. App. 1987), the District Court of Appeals for the Fourth District noted that "the obvious purpose of the 'Little FTC Act' [which includes § 501.2105(1)] is to make consumers whole for losses caused by fraudulent consumer practices [and that] ... [t]hese aims are not served if the attorney[] fees are not included in the protection." Id. at 368 (citation omitted); cf. Florida Erection Serv. v. McDonald, 395 So.2d 203, 207-08 (Fla. 1st Dist. Ct. App. 1981) (explaining that an award of attorney fees, unlike an award of punitive damages, "does not provide remuneration to the claimant over and above the amount necessary to compensate him for his loss"). Even though the primary purpose of such an award is to encourage private enforcement of statutory policies, thus benefitting the public, see Standard Guaranty Ins. Co. v. Quanstrom, 555 So.2d 828, 833-34 (Fla. 1990), that does not mean attorney fees are not also compensatory in nature. The Florida Supreme Court has recognized that private individuals cannot be expected to pursue statutory causes of action unless their own losses and costs, including their attorney fees, will be fully compensated. See id. (noting that "[i]f ... consumers cannot recover in full their attorney fees, they will quickly determine it is too costly ... to file suit, and individual enforcement of this act will fail") (quoting LaFerney v. Scott Smith

27

Oldsmobile, Inc., 410 So.2d 534, 536 (Fla. 1st Dist. Ct. App. 1978)). Because the statutory attorney fees involved in this case serve a significant compensatory purpose, in this case as in Darden, aggregating the claimed attorneys fees would be inconsistent with Snyder. Consequently, the nature and purpose of the statutory right to attorney fees in this case strongly resemble those of the statutory right to attorneys fees in Darden; it follows that the result should be the same.

Because the attorney fees authorized by the Florida statutes in this case serve to compensate plaintiffs for losses resulting from allegedly unlawful business practices, and because claims for those fees could be asserted by the class plaintiffs in individual suits, we conclude that the claimed fees do not constitute "a single title or right in which [the class members] have a common and undivided interest." Snyder, 394 U.S. at 335, 89 S. Ct. at 1056. It follows that the amount of claimed attorney fees may not be considered in the aggregate – may not be attributed in whole to each class member – but instead, like the class claim for punitive damages, it must be divided out among the total number of class members for amount in controversy purposes. Because each class member's damages claim approximates $260, and the claimed attorney fees must be divided pro rata among 39,000 class members, an astronomical amount of attorney fees would have to be

recovered in order to satisfy the amount in controversy requirement.[16]  Such a

recovery is not possible, and therefore, neither is diversity jurisdiction.

## III.  CONCLUSION

Because we conclude that Cohen has failed to allege a sufficient amount in

controversy to establish jurisdiction under 28 U.S.C. § 1332(a), we vacate our prior

opinion reversing the district court's dismissal of this case and remanding for

further proceedings.  We now affirm the district court's order dismissing the case

for lack of subject matter jurisdiction.

AFFIRMED.

---

[16] Each class member must, in effect, "recover" $74,740 in attorneys fees ($75,000 required for diversity jurisdiction minus the $260 in damages per class member).  That means the class would have to recover a total of $2.9 billion in attorneys fees ($74,740 multiplied by the alleged 39,000 class members).