[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 13, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15442
Non-Argument Calendar

_____

D. C. Docket No. 05-02205-CV-T-27TGW

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff-Appellee,

versus

MICHAEL J. MARKOWSKI,
JOSEPH F. RICCIO,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(May 13, 2008)**

Before HULL, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Michael Markowski and Joseph Riccio appeal the district court's summary judgment ruling to enforce the Security Exchange Commission's order sustaining disciplinary sanctions against Markowski and Riccio. For the reasons discussed below, we affirm the district court's order.

## BACKGROUND

On July 13, 1998, an adjudicatory council of the National Association of Securities Dealers ("NASD") found that Appellants Markowski and Riccio had violated NASD rules and federal securities laws and imposed disciplinary sanctions. The NASD ordered

> that Markowski be censured, barred in all capacities from association with any member of [NASD], fined $300,000, and assessed costs of $3,961.88; and that Riccio be censured, barred in all capacities from association with any member of the NASD, fined $250,000, and assessed costs of $3961.88.

Appellants appealed this order to the SEC. The SEC affirmed the sanctions on September 7, 2000. Appellants then appealed the SEC's decision to the DC Circuit, which affirmed it, and to the U.S. Supreme Court, which denied certiorari. See Markowski v. SEC, 537 U.S. 976 (2002).

On March 8, 2000, the SEC issued a press release stating that it would begin seeking to enforce fines imposed by the NASD and sustained by the SEC under Section 21(e)(1) of the Securities Exchange Act which permits the SEC to apply to

2

the U.S. District Courts for an order commanding compliance with SEC orders. In the press release, the SEC referred to this initiative as a "new program" it was "beginning" in order to prevent persons sanctioned by the NASD from escaping payment of fines or restitution orders.

In 2005, the SEC applied to the district court to enforce the sanctions imposed upon Appellants by the NASD. Appellants responded with the affirmative defense that application of Section 21(e)(1) to them violated their due process rights. The district court disagreed and ordered Appellants to comply with the SEC/NASD sanctions. Appellants timely filed the present appeal.

## DISCUSSION

Appellants assert that application of Section 21(e)(1) to them would violate their due process rights because (1) the SEC's decision to begin enforcing sanctions under that section is a new agency policy requiring fair notice to them which they did not receive, (2) they would be punished for exercising their right to appeal because the SEC only has authority to seek enforcement of NASD sanctions that have been appealed to the SEC, and (3) the SEC is unlawfully applying its "new policy" of enforcement retroactively to them.

Since its enactment in 1975, the Exchange Act included Section 21(e)(1), codified at 15 U.S.C. § 78u(e)(1). The section states that

3

> [u]pon application of the [SEC] the district courts of the United States
> . . . shall have jurisdiction to issue writs of mandamus, injunctions,
> and orders commanding (1) any person to comply with the provisions
> of this chapter, the rules, regulations, and orders thereunder, the rules
> of a national securities exchange or registered securities association of
> which such person is a member . . . .

15 U.S.C. § 78u(e)(1). Prior to its March 8, 2000 press release, however, the SEC had never sought judicial enforcement of NASD/SEC sanctions in the over twenty years that Section 21(e)(1) had been present in the Act.[1] As a practical matter, therefore, persons sanctioned by the SEC had not been forced to pay the fines imposed upon them unless they wished to regain membership in the NASD —a requirement for work as a broker. Only when those individuals sought to rejoin the NASD did NASD gain the leverage to require payment of the imposed fines.

Appellants argue that the March 8, 2000 press release constituted the initiation of a new government rule to enforce sanctions because it represented a change in SEC practice and policy. Appellants contend that, as a new rule, it cannot be applied without satisfying the fair notice requirements under the Administrative Procedure Act ("the APA"). According to Appellants, because the SEC's policy was a new rule and because there is a presumption against retroactive application of new rules to conduct that occurred prior to promulgation of the rule,

---

[1] The parties do not dispute that the SEC did not utilize Section 21(e)(1) until after the March 8, 2000 press release was issued.

4

this "new rule" should not be applied to them. See INS v. St. Cyr, 533 U.S. 289, 324 (2001) (noting that there is a presumption against retroactivity which applies in both criminal and civil law). The SEC responds that it is not following a new rule, but rather it is simply relying on the plain language of the statute which it always had the power to do.

The SEC's decision to begin utilizing Section 21(e)(1) was not a "new rule" requiring notice and publication under the APA. The APA includes an exception to the notice requirements for "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A); see Ryder Truck Lines, Inc. v. U.S.,716 F.2d 1369, 1377 n.11 (11th Cir. 1983). The courts have often struggled with determining the difference between rules and policy statements. See Jean v. Nelson, 711 F.2d 1455, 1480 (11th Cir. 1983) (stating that "analyzing a rule within the general statement of policy exception is akin to wandering lost in the Serbonian Bog"). This court generally differentiates on the basis that general policy statements leave agencies "free to exercise discretion" whereas rules establish "binding norms." Id. at 1481.

The SEC's March 8, 2000 press release was not a new rule under any definition. The press release represented a decision to act on authority (the statute) previously given to the SEC, did not involve any change or interpretation of the

5

statute, and in no way created a new binding norm on parties. Thus, the decision to begin utilizing the plain language of the statute fell squarely into the category of general statement of policy rather than a new rule requiring publication and notice. The SEC's long-standing practice of not using Section 21(e)(1) did not diminish its ability to invoke the plain language of the statute nor transform the decision to begin utilizing it into a "new rule." United States v. Morton Salt Co., 338 U.S. 632, 647 (1950).[2] Neither did the wording in the press release referring to the SEC's decision to use Section 21(e)(1) as a "new program" that was "beginning" create a new rule. Because there was no new rule, no issues of lack of notice were raised by the SEC's exercise of a power it had all along.

There is also no problem of alleged retroactive application of law to Appellants. Section 21(e)(1) has existed in the Exchange Act since 1975 and the SEC applied the plain language terms of the statute to Appellants' NASD sanction. As stated above, the SEC applied the plain language of the statute to Appellants rather than any "new rule" promulgated after Appellants' SEC appeal.

This Court has already reviewed and upheld the validity of Section 21(e)(1) and the SEC's power to invoke that section. SEC v. Vittor, 323 F.3d 930 (11th

_____

[2] Although Morton Salt involved an agency rule that was published in the Federal Register in compliance with the APA, we still find Morton Salt instructive as to the power to revive a dormant statute.

Cir. 2003). Appellants argue that they have raised new issues challenging Section 21(e)(1) that were not addressed in Vittor. However, the effect of Section 21(e)(1) on individuals' appeal rights was addressed in Vittor. The dissent expressed concern that the interplay of sections 21(f) and 21(e)(1) would create an incentive not to appeal NASD disciplinary decisions to the SEC. Vittor, 323 F.3d at 937 (Black, J., dissenting). Although the majority opinion did not address this issue, we can assume the majority read the dissent and found that the statute remained valid despite this argument. To the extent that Appellants argue that they have new, stronger arguments that Section 21(e)(1) is invalid because of the effect on their appeal rights, these arguments are foreclosed by Vittor. We are bound by court precedent regardless of whether future litigants feel they have better arguments that prior litigants failed to raise. See Cohen v. Office Depot, Inc., 204 F.3d 1069, 1076 (11th Cir. 2000) ("Unless and until the holding of a prior decision is overruled by the Supreme Court or by the en banc court, that holding is the law of this Circuit regardless of what might have happened had other arguments been made to the panel that decided the issue first.").

## CONCLUSION

For the foregoing reasons, we **affirm** the decision of the district court.