[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-12125
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 19, 2011
JOHN LEY
CLERK

D.C. Docket No. 5:09-cv-00283-MTT


SHERBORAH MONIQUE DAVIS,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(December 19, 2011)

Before MARCUS, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

Sherborah Davis appeals the district court's order affirming the Social

Security Administration's denial of her applications for disability insurance benefits and supplemental security income under 42 U.S.C. §§ 405(g), 1383(c)(3). On appeal, she first argues that the Administrative Law Judge ("ALJ") rejected her treating psychiatrist's opinion without good cause. Second, she argues that the ALJ's finding that she was not credible was not supported by substantial evidence. For the reasons set forth below, we vacate and remand for further proceedings consistent with this opinion.

I.

The medical evidence included treatment notes prepared by Dr. Cornell Peters, Davis's physician, in 2005 and 2006. On a number of occasions in 2005, Dr. Peters noted the presence of depression, anxiety, or both.

On May 22, 2006, Davis was interviewed over the phone regarding her disability application. The phone interviewer did not observe any limitations, including in the areas of reading, understanding, talking, and concentrating.

Davis and her husband, Casey Walker, completed function reports on June 1, 2006. Davis reported that she had no motivation, stayed in bed until mid afternoon, and depended on family members to help take care of her children and housework. She did not get along well with others, had trouble remembering things, and lacked motivation to care for her personal hygiene. She could not go

2

places alone, and she only rarely accompanied her husband or other family members when they went grocery shopping. Davis further reported that she did not need to be reminded to take her medicine, but sometimes her husband helped her remember what medicine to take and when to take it. Additionally, she had suicidal thoughts and did not believe that her medications were beneficial. Walker reported that Davis spent most of her time in bed and that family members helped care for their sons. Furthermore, she had mood swings, preferred to be alone, and was constantly discussing suicide.

On August 7, 2006, Dr. Larmia Robbins-Brinson, a psychologist, evaluated Davis. Davis reported that she could complete her daily routine, which included spending most of her time resting in bed while her family members took care of her housework. She could concentrate long enough to follow a television program. Her husband drove for her. Dr. Robbins-Brinson believed that Davis truthfully provided this report of her daily activities. She found that, although Davis could understand complex instructions, her ability to follow instructions could be variable. She had a fair ability to get along with others, and she might not be able to concentrate long enough to complete tasks in a timely manner.

Dr. John Petzelt completed a psychiatric review technique and mental residual functional capacity ("RFC") assessment of Davis on August 17, 2006, and

3

Dr. John Cooper did the same on November 28, 2006. The doctors reached the same conclusions. They found that Davis was not significantly limited in her ability to understand and remember simple and detailed instructions or to carry out simple instructions. She was mildly limited in her ability to function socially. Her daily living activities, ability to maintain concentration, and ability to carry out detailed instructions were moderately limited.

On August 19, 2006, Davis was admitted to the psychiatric floor of the hospital after going to the emergency room due to heart palpitations, depression, and suicidal ideation. According to notes from a mental status exam conducted that day, Davis appeared unkempt and depressed; spoke slowly; was despairing, anxious, empty, and depressed; had a flat affect, hallucinations, and suicidal ideation. According to medical notes from August 19, Davis stated that she had been hearing voices for three months, was anxious, and was unable to leave her home very often due to her anxiety. She was discharged on August 22, 2006. Medical notes from that date indicated that Davis was feeling happy, had slept well, had an improved energy level, and had an appropriate affect.

On June 26, 2007, Dr. Stephen D. Mallary, a psychiatrist, prepared an interrogatory regarding Davis's symptoms. The first question asked whether Davis intermittently or persistently had some or all of a number of symptoms,

including lost interest in most activities, decreased energy, suicidal thoughts, hallucinations, delusions, and paranoia. Dr. Mallary responded "yes" to the question. The second question asked whether Davis intermittently or persistently had any of a number of other symptoms. Dr. Mallary underlined "paranoid thinking" and circled "yes" in response to the question. He also stated that Davis had panic attacks that completely prevented her from independently functioning outside of her house and was extremely limited in her daily living activities and ability to function socially. Davis was moderately limited in her ability to remember and carry out simple instructions. She was markedly impaired in her ability to make simple work-related decisions and to interact appropriately with the general public. Finally, Davis was extremely impaired in her ability to understand and carry out detailed instructions, concentrate for extended periods of time, work without interruptions from psychological symptoms, get along with coworkers, and accept instructions and criticisms from supervisors.

Dr. Mallary's treatment notes, on forms from The Psychiatric Center, are also in the record. His name is not typewritten on the notes, but he signed the notes from Davis's first visit and initialed the notes thereafter. Dr. Mallary first evaluated Davis on February 15, 2007. On that date, he noted that Davis was depressed, anxious, and had had suicidal thoughts. He diagnosed Davis with

5

bipolar disorder and post-traumatic stress disorder. Dr. Mallary continued to see Davis throughout 2007, and he noted on six occasions that she did not have suicidal thoughts. However, on three other occasions, Davis had suicidal thoughts, and on another occasion, she had homicidal thoughts and hallucinations.

Davis's application for disability insurance benefits was denied initially and upon reconsideration. She requested and was granted an administrative hearing before an ALJ. Prior to the hearing, she filed her application for supplemental security income.

At the hearing, Davis testified that she lived with her six- and ten-year-old sons. Her mother-in-law had been cooking for her and her sons, but she had recently moved. Since then, Davis's ten-year-old son did most of the cooking. Davis and her husband had separated in late 2006, but he still checked in on her and her sons and ran errands for them. For example, her husband drove their sons to school. However, she could drive her sons to school if necessary because it was only about a third of a mile away. She was able to drive short distances, such as to pick up prescriptions.

Davis further testified that she was hospitalized in August 2006 for having homicidal and suicidal thoughts. That hospitalization was the only time she had been admitted to the hospital for psychiatric reasons. She had heart palpitations

6

and anxiety attacks regularly. She had had a panic attack a few minutes before testifying. As to her treatment, Davis testified that Dr. Mallary was her psychiatrist. She was taking a number of medications, including Zoloft for depression and Seroquel to help her sleep. She took her medicine fairly regularly. However, she sometimes stopped taking antidepressants when she was feeling hopeless and as if the medicines were not working. Medicine was somewhat helpful to her when she took it on schedule.

The ALJ found that Davis was not disabled. He found that Davis had a mood syndrome, which was a severe impairment, and hypertension and tachycardia, which were non-severe impairments. These impairments did not meet a listing in 20 C.F.R. § 404, Subpart P, Appendix 1, and Davis had an RFC to perform routine and repetitive work. The ALJ found that Davis's impairments could be expected to produce her alleged symptoms, but that her assertion of the extent to which she was limited by her symptoms was not credible. The ALJ noted a number of inconsistencies between Davis's claims and the evidence. Davis claimed to have difficulty concentrating, but when she was interviewed, her phone interviewer found that Davis had no trouble concentrating. She claimed to avoid socializing with others, but also stated that family members took care of her children daily. She claimed to have memory problems, but also stated that she

7

could remember to take her medication. Although she stated that she did not drive and that she avoided crowds, she also admitted to occasionally picking up her children from school and grocery shopping with her husband. The ALJ also noted that Davis did not seek mental health treatment until after applying for disability insurance benefits. Despite claiming that she did not think her medications helped her, Davis also stated that the medications did help her occasionally. Furthermore, Davis told a consultative examiner that she could complete her daily routine.

As to the medical evidence, the ALJ gave Dr. Robbins-Brinson's opinion that Davis would have difficulty carrying out complex instructions moderate weight and included the restriction in Davis's RFC. The ALJ disagreed with Dr. Petzelt's and Dr. Cooper's opinions that Davis was moderately limited in her daily living activities because she lived independently, took care of her children, and was more stable according to the recent medical evidence. Moreover, her hospitalization on the psychiatric floor was brief and occurred in 2006. The ALJ gave little weight to the opinion of Dr. Mallary, whom he mistakenly referred to as Dr. Mauary. First, Dr. Mallary did not specify in the first two questions on the interrogatory whether Davis had all or only some of the symptoms listed. Second, Dr. Mallary found that Davis was extremely limited in her daily living activities even though she lived independently with her children. Third, the questionnaire

8

filled out by Dr. Mallary did not specify what type of doctor he was or whether he was Davis's treating physician. Finally, the ALJ noted that according to the treatment records from The Psychiatric Center, Davis was treated regularly by mental health professionals. Based on the above, the ALJ found that Davis was not disabled and that she was capable of performing her past relevant work as a file clerk, which required light exertion.

The Appeals Council denied Davis's request for review, and the district court affirmed the Commissioner's decision.

## II.

We review a Social Security case to "determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotations omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotations omitted). "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Id.* (quotation and alteration omitted).

The ALJ is to consider a number of factors in determining the weight to give to each medical opinion: (1) whether the doctor has examined the claimant;

9

(2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization. 20 C.F.R. §§ 404.1527(d), 416.927(d). These factors apply to both examining and nonexamining doctors. *Id.* §§ 404.1527(f), 416.927(f). The ALJ must give a treating physician's opinion "substantial or considerable weight" unless there is good cause to disregard the opinion. *Winschel*, 631 F.3d at 1179 (quotation omitted). "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* (quotation omitted). The ALJ "must clearly articulate" his reasons for disregarding a treating physician's opinion. *Id.* (quotation omitted). Moreover, his explanation must include "good reasons." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). We will not affirm an ALJ's decision without adequate explanation because, without such an explanation, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel*, 631 F.3d at 1179 (quotation omitted).

The ALJ in this case did not give adequate reasons for rejecting Dr.

Mallary's opinion. *See id.* Davis testified that Dr. Mallary was her psychiatrist, and she and the Commissioner agree that Dr. Mallary was her treating psychiatrist who completed the treatment notes from The Psychiatric Center. However, the ALJ misread Dr. Mallary's signature on the interrogatory and did not realize that the treatment notes from The Psychiatric Center were completed by Dr. Mallary. Accordingly, the ALJ only briefly mentioned the treatment notes, noting that they showed that Davis had received regular mental health treatment. As to the interrogatory, the ALJ found the opinion unpersuasive because the answers to the first two questions were conclusory, the ultimate opinion was inconsistent with the fact that Davis lived independently with her children, and the interrogatory did not specify what type of doctor had completed it or what the doctor's relationship was to Davis. It is clear from this finding that the ALJ did not give Dr. Mallary's opinion controlling weight. However, it is not clear from the record whether the ALJ would have come to the same conclusion had he understood that Dr. Mallary was the treating psychiatrist and that Dr. Mallary had also completed the treatment notes from The Psychiatric Center.

Because we cannot "substitute our judgment for that of the Commissioner,"

11

we remand the case for further factual findings.[1]  *Winschel*, 631 F.3d at 1178;

*Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir. 1982).  The ALJ should

explicitly reconsider Dr. Mallary's opinion in light of his treatment notes, the

record as a whole, and his position as Davis's treating psychiatrist.  *See Winschel*,

631 F.3d at 1179.  If the ALJ declines to accord Dr. Mallary's opinion controlling

weight, he must provide "good reasons" for his decision.  20 C.F.R.

§§ 404.1527(d)(2), 416.927(d)(2).

III.

The individual seeking Social Security disability benefits bears the burden

of proving that she is disabled.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th

Cir. 2005).  A claimant may establish that she has a disability through her "own

testimony of pain or other subjective symptoms."  *Dyer v. Barnhart*, 395 F.3d

1206, 1210 (11th Cir. 2005).  In such a case, the claimant must show:

> (1) evidence of an underlying medical condition and either
> (2) objective medical evidence that confirms the severity of the
> alleged pain arising from that condition or (3) that the objectively

---

[1] Davis argues that, under *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986), we should accept Dr. Mallary's opinion as true.  However, in *Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir. 1982), we remanded the case for further factual findings because the ALJ failed to explain the weight it gave to the treating physician's opinion.  Because *Wiggins* was decided before *MacGregor*, it is that case, not *MacGregor*, that is controlling.  *See Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2000) (explaining that where two of our panel decisions are in conflict, the earliest in time controls).

determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.* (quotation omitted). In evaluating a claimant's testimony, the ALJ should also consider: (1) the claimant's daily activities; (2) the "duration, frequency, and intensity" of the claimant's symptoms; (3) "[p]recipitating and aggravating factors"; (4) the effectiveness and side effects of any medications; and (5) treatment or other measures taken by the claimant to alleviate symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ is to consider these factors in light of the other evidence in the record. *Id.* §§ 404.1529(c)(4), 416.929(c)(4). If the ALJ discredits the claimant's testimony as to her subjective symptoms, he must give "adequate reasons" showing that he considered the claimant's "medical condition as a whole." *Dyer*, 395 F.3d at 1210 (quotations omitted).

The ALJ's credibility finding in this case is not supported by substantial evidence. *See Winschel*, 631 F.3d at 1178. Contrary to the ALJ's findings regarding Davis's daily living activities, Davis reported that she spent most of her time in bed, relied on family members and her ten-year-old son to take care of her housework and childcare, lacked motivation to care for her personal hygiene, and only had to drive a third of a mile to pick up her children from school. She told Dr. Robbins-Brinson that she could complete her daily routine, which consisted of

13

resting in bed while her family members completed her housework. Thus, the inconsistencies as found by the ALJ are not supported by substantial evidence. That is, relying on family members to take care of her children and housework while she rested did not refute her claim that she did not like to socialize. Only driving a third of a mile to pick up her children from school and relying on her husband to accompany her when shopping did not refute her claims that she hated driving and hated crowds. That a phone interviewer found Davis able to concentrate did not refute her claim that she had difficulty concentrating.

The ALJ's findings regarding Davis's medical treatment are also not supported by substantial evidence. First, although the ALJ found that Davis did not seek treatment for her depression until after she applied for disability benefits, Dr. Peters's treatment notes reference anxiety and depression in 2005—before Davis applied for disability benefits in 2006. Second, the ALJ found that Davis was taking a number of medications, which sometimes helped. Davis, however, testified that her medications were not always beneficial. Third, the ALJ found that Davis had only once been briefly hospitalized for her depression. This finding, while accurate, fails to consider that the reason for hospitalization (suicidal ideation) was consistent with the record as a whole. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Davis and her husband both reported that she

14

frequently discussed suicide, and Dr. Mallary noted on a number of occasions that Davis was suicidal. Therefore, the ALJ's finding minimizing the seriousness of this hospital stay is not supported by the record as a whole. Based on the above, the ALJ's decision is not supported by substantial evidence, and on remand, the ALJ should consider Davis's credibility in light of the record as a whole and in a manner consistent with this opinion.

For the foregoing reasons, we vacate and remand to the district court with instructions to remand the case to the Commissioner for further review and findings consistent with the record.

**VACATED AND REMANDED.**