[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-14110
_____

D.C. Docket No. 1:17-cv-00414-TCB


FASTCASE, INC.,

                                                        Plaintiff-Appellant,

versus

LAWRITER, LLC,

                                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 29, 2018)

Before TJOFLAT and JORDAN, Circuit Judges, and HINKLE,[*] District Judge.

TJOFLAT, Circuit Judge:

_____

[*] Honorable Robert Lewis Hinkle, United States District Judge for the Northern District of Florida, sitting by designation.

Fastcase, Inc., appeals the District Court's dismissal of its suit under the Declaratory Judgment Act against Lawriter, LLC. The District Court held that it lacked subject-matter jurisdiction under 21 U.S.C. § 1331 because Fastcase's complaint presented no federal question. The District Court also held that it lacked jurisdiction under 28 U.S.C. § 1332(a) because Fastcase failed to satisfy the jurisdictional minimum. Because both of these rulings were erroneous, we vacate the District Court's order and remand the case for further proceedings.

## I. BACKGROUND

Fastcase and Lawriter are competitors in the market for legal research services. Both companies provide searchable online databases of public law, including federal and state statutes, administrative rules and regulations, and judicial decisions. This case concerns the right to publish the Georgia Administrative Rules and Regulations ("Georgia Regulations") for use by lawyers and law firms.

In 2010, Fastcase entered into a contract with the State Bar of Georgia under which Fastcase was to provide a database of Georgia law, including the Georgia Regulations. In exchange for providing this database to all 40,000-plus members of the Georgia Bar, Fastcase receives an annual per-member fee. To keep its collection of Georgia law current, Fastcase visited the official Georgia Regulations

2

page on the Georgia Secretary of State's ("Secretary") website multiple times per week.

The Secretary is required to publish the Georgia Regulations and make them available to the public. O.C.G.A. § 50-13-7. In 2015, the Secretary delegated this duty to Lawriter pursuant to a contract that requires Lawriter to publish the regulations on the Secretary's website. Specifically, the contract requires Lawriter to "make the Georgia Regulations continuously and freely available twenty-four (24) hours a day, seven (7) days a week for viewing and searching by the general public via internet connection," and further provides that "this shall be done at no charge and without the requirements of any passwords, codes, or requirements of any kind." Under the contract, Lawriter is also permitted "to sell complete copies of the entire set of rules and regulations or individual chapters of the rules and regulations at such reasonable prices and terms that Lawriter may determine at its sole discretion." The contract further obliges the Secretary to pay Lawriter $5,000 quarterly, but this obligation is waived every time Lawriter sells a "complete set"[1] of the Georgia Regulations.

On December 21, 2015, Lawriter sent a letter to Fastcase accusing Fastcase of violating Lawriter's rights by providing users access to the Georgia Regulations

---

[1] The contract is not clear on what constitutes a "complete set"—*i.e.*, whether the term refers only to a complete hardbound set or includes a complete digital set. Nothing in this appeal turns on the answer to this question. However, whether a "complete set" includes a digital copy is a question the District Court will likely have to grapple with on remand. *See infra* note 10.

as part of a fee-based service.  The letter demanded that Fastcase stop offering the Georgia Regulations; otherwise, Lawriter would "take those steps Lawriter deem[ed] necessary to protect its legal rights, which may include litigation."  On February 3, 2016, Fastcase filed its first suit against Lawriter seeking declaratory relief and a permanent injunction that would prevent Lawriter from interfering with Fastcase's publication of the Georgia Regulations.  In its complaint, Fastcase asserted that Lawriter has no legal rights, by contract or copyright, to restrict publication of the Georgia Regulations. The District Court dismissed this case for lack of subject-matter jurisdiction both because Lawriter did not currently hold a registered copyright and, therefore, could not have brought an infringement claim in federal court, and because Fastcase failed to satisfy the jurisdictional minimum.

During the first suit, Lawriter added a terms of use policy ("Terms of Use") to the Secretary's website.  Following this addition, a viewer wishing to access the Georgia Regulations must agree to the Terms of Use, which provide:

- You agree that you will not sell, will not license, and will not otherwise make available in exchange for anything of value, anything that you download, print, or copy from this site.

- You agree that you will not copy, print, or download any portion of the regulations posted on this site exceeding a single chapter of the regulations for sale, license, or other transfer to a third party, except that you may quote a reasonable portion of the regulations in the course of rendering professional advice.

4

- If you violate this agreement, or if you access or use this website in violation of  this agreement, you agree that Lawriter will suffer damages of at least $20,000.

A week after the first suit was dismissed, Fastcase filed this suit under the Declaratory Judgment Act.  According to Fastcase's new complaint, the District Court had jurisdiction because Lawriter's threatened litigation included copyright infringement claims and state law claims preempted by the Copyright Act.  The complaint also alleged diversity jurisdiction on the grounds that the potential liability Fastcase faced for violating Lawriter's Terms of Use exceeded $75,000.  As in the first suit, the District Court dismissed Fastcase's complaint for lack of jurisdiction.

## II. STANDARD OF REVIEW

We review a district court's ruling on questions of jurisdiction *de novo*. *United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 841 F.3d 927, 932 (11th Cir. 2016).

## III. DISCUSSION

"[T]he Declaratory Judgment Act does not, of itself, confer jurisdiction upon federal courts."  *Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 861–62 (11th Cir. 2008).  Rather, it "allow[s] parties to precipitate suits that otherwise might need to wait for the declaratory relief defendant to bring a coercive action."  *Household Bank v. JFS Grp.*, 320 F.3d 1249, 1253 (11th Cir.

5

2003) (alteration in original) (citing *Gulf States Paper Corp. v. Ingram*, 811 F.2d 1464, 1467 (11th Cir. 1987)).  Accordingly, "we do not look to the face of the declaratory judgment complaint in order to determine the presence of a federal question."  *Stuart Weitzman*, 542 F.3d at 862 (quoting *Hudson Ins. Co. v. Am. Elec. Corp.*, 957 F.2d 826, 828 (11th Cir. 1992)). Instead, we "must determine whether or not the cause of action anticipated by the declaratory judgment plaintiff arises under federal law." *Id.*

As noted above, Fastcase alleges two bases for federal jurisdiction.  First, Fastcase argues that Lawriter's threatened copyright infringement claims and preempted state law claims confer jurisdiction under 28 U.S.C. § 1338(a).[2] Second, Fastcase alleges federal diversity jurisdiction under 28 U.S.C. § 1332(a)(1). We address these jurisdictional bases in turn.

## A.

As the District Court observed, Lawriter's threatened litigation against Fastcase raises potential copyright infringement claims.  Ordinarily, this would be enough to confer jurisdiction—federal courts, after all, have exclusive jurisdiction over "any civil action arising under any Act of Congress relating to . . . copyrights."  28 U.S.C. § 1338(a); *Sullivan v. Naturalis, Inc.*, 5 F.3d 1410, 1413 (11th Cir. 1993) (quoting *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir.

---

[2] Section 1338(a) provides, in relevant part, that "district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights."

1964)) (recognizing that a claim "arises under" the Copyright Act if it "require[es] construction of the Act").  But the District Court ultimately held that it lacked jurisdiction over the case because Lawriter had not yet registered a copyright in the Georgia Regulations.

In reaching its conclusion, the District Court relied on our decision in *Stuart Weitzman, LLC v. Microcomputer Resources, Inc.*  In *Stuart Weitzman*, this Court considered whether the Copyright Act's registration requirement[3] acts as a jurisdictional bar to copyright infringement claims.  542 F.3d at 863.  There, as here, the plaintiff brought suit under the Declaratory Judgment Act anticipating copyright infringement claims as well as state law claims allegedly preempted by the Copyright Act. *Id.* at 862.  And also there, as here, the copyrighted works at issue had not been registered.  *Id.* at 863.  At the time, the consensus among federal appellate courts was that § 411(a)'s registration requirement was jurisdictional.  *Id.* (citing *Walton v. United States*, 80 Fed. Cl. 251, 260 (2008) (collecting cases)).  Moreover, this Court had previously held "§ 411(a)'s 'registration requirement [to be] a jurisdictional prerequisite to an infringement suit.'" *Id.* (quoting *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1488 & n.4 (11th Cir. 1990)).  Thus, because the declaratory relief defendant had not yet registered the

---

[3] 17 U.S.C. § 411(a) provides, in relevant part, that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."

7

copyrighted works at issue, we held that the anticipated infringement claims could not confer subject-matter jurisdiction.  *Id.*

Since our decision in *Stuart Weitzman*, however, the law on § 411(a)'s registration requirement has changed.  In *Reed Elsevier, Inc. v. Muchnick*, the Supreme Court held that while § 411(a)'s registration requirement remains a "precondition to filing a claim," it "does not restrict a federal court's subject-matter jurisdiction."  559 U.S. 154, 157, 130 S. Ct. 1237, 1241 (2010).  Thus, while a complaint claiming infringement of an unregistered copyright can be dismissed for failure to state a claim, it cannot be dismissed for lack of jurisdiction.

To be sure, the facts of *Muchnick* and this case are substantially different.  As the District Court noted, the decision in *Muchnick* was made in the context of a class action certification for the purposes of settlement approval, not in the context of a declaratory judgment.  But the District Court did not explain why this distinction mattered or why we should decline to extend *Muchnick* beyond *Muchnick*-like facts.  Indeed, this Court has already explained—in an appeal from dismissal of a copyright infringement action, a factual setting very different from *Muchnick*—that § 411(a) is no longer a jurisdictional bar.  *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 856 F.3d 1338, 1339–40 (11th Cir. 2017), *cert. granted*, 138 S. Ct. 2707 (mem.).  *See also Roberts v. Gordy*, 877 F.3d 1024,

8

1028 (11th Cir. 2017) (explaining that, in light of *Muchnik*, "a federal court's jurisdiction is not conditional on a [§ 411(a)] registration").

Nevertheless, Lawriter cites two Eleventh Circuit decisions for the proposition that "this Court . . . ha[s] dismissed copyright infringement claims involving unregistered works post-*Muchnick*."[4] Appellee's Br. at 20.  And so it has.  But rather than supporting Lawriter's argument, these cases reinforce the conclusion that § 411(a)'s registration requirement is a non-jurisdictional precondition to suit.

In the first case, *Dowbenko v. Google, Inc.*, the plaintiff's copyright infringement claim was dismissed for failure to comply with § 411(a)'s registration requirement.  582 F. App'x 801, 805 (11th Cir. 2014) (per curiam).  Although the claim was dismissed, it was not dismissed for lack of jurisdiction; the *Dowbenko* Court recognized that "§ 411(a)'s registration requirement is not jurisdictional."  *Id.*  Instead, the plaintiff's claim was dismissed on a Rule 12(b)(6) motion because he "failed to plead that he registered the copyright to the [allegedly infringed] photograph."  *Id.*  This result—that is, treating the registration requirement as an element of an infringement claim—suggests that § 411(a) is simply a "precondition to filing a [copyright-infringement] claim."  *Id.* (alteration in original) (quoting *Muchnick*, 559 U.S. at 157, 130 S. Ct. 1237).

---

[4] The District Court similarly relied on these two cases to demonstrate that *Stuart Weitzman* controlled this case even after *Muchnick*.

9

Lawriter's second case, *Foundation for Lost Boys & Girls of Sudan, Inc. v. Alcon Entertainment, LLC*, similarly fails to support Lawriter's argument.  In *Lost Boys*, plaintiffs brought a declaratory judgment action seeking a declaration of their exclusive rights to certain copyrighted works.  No. 1:15-cv-00509-LMM, 2016 WL 4394486, *4 (N.D. Ga. Mar. 22, 2016).  Defendants moved to dismiss the action under both Rules 12(b)(1) and 12(b)(6).  *Id* at *1.  As to the 12(b)(6) motion, the district court concluded that, because the plaintiffs had not registered their works under § 411(a), they could not maintain a claim for copyright infringement.  *Id.* at *7.  As to the 12(b)(1) motion, however, the district court acknowledged that the Supreme Court in *Muchnick* "determined that registration of a copyright was an element of a copyright infringement claim, and not a jurisdictional requirement."  *Id.* at *5.  Accordingly, the district court rejected defendants' claim that it lacked jurisdiction simply because plaintiffs' works were unregistered. *Id.*

Because § 411(a)'s registration requirement is not jurisdictional, the District Court here had jurisdiction over the suit despite the fact that Lawriter had not registered a copyright in the Georgia Regulations.  Accordingly, the District Court erred in dismissing Fastcase's complaint for lack of federal-question jurisdiction.

B.

10

While there is no dispute that the parties are completely diverse, the District Court also concluded that it lacked diversity jurisdiction because Fastcase failed to satisfy the amount-in-controversy requirement. For the reasons explained below, this was error.

1.

Federal courts are courts of limited jurisdiction. To invoke a federal court's diversity jurisdiction, a plaintiff must claim, among other things, that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). "When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (quoting *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000)). Ordinarily, a plaintiff need only plead an amount sufficient to satisfy the amount-in-controversy requirement in good faith. *Id.* The plaintiff's good-faith pleading will be second guessed only if it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S. Ct. 586, 590 (1938). However, when the plaintiff pleads an unspecified amount of damages, it bears the burden of proving by a preponderance of the evidence that the claim on which jurisdiction is based exceeds the

jurisdictional minimum.[5]  *See McKinnon Motors*, 329 F.3d at 807.  This additional requirement is "warranted because there is simply no estimate of damages to which a court may defer."  *Tapscott*, 77 F.3d at 1356–57.

Fastcase argues that it satisfies the jurisdictional minimum in two ways. First, Fastcase claims that its contract with the Georgia Bar will be terminated if it is unable to deliver the Georgia Regulations and that this contract is worth well over $75,000.  Because this is a claim for an indeterminate amount of damages, Fastcase was required to prove by a preponderance of the evidence that its inability to access the Georgia Regulations would lead to a loss of its contract with the Georgia Bar, and that this loss would exceed $75,000.  Fastcase did not make this showing, and we thus agree with the District Court that, as to this allegation, Fastcase failed to satisfy the amount-in-controversy requirement.

Fastcase also argues that in order to maintain its contract with the Georgia Bar it will need to visit the Secretary's website, copy the Georgia Regulations, and thereby violate Lawriter's terms of use on a daily basis—each violation subjecting

---

[5] The District Court suggested that the preponderance requirement for pleading the amount in controversy applies to all declaratory judgments.  However, as *Tapscott* and subsequent cases explain, this heightened standard only applies to claims involving unspecified or indeterminate damages.  *See McKinnon Motors*, 329 F.3d at 807; *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356–57 (11th Cir. 1996), *abrogated on other grounds by Cohen*, 204 F.3d at 1072–77.  It is not the type of relief that triggers the preponderance requirement, but instead the specificity with which the plaintiff pleads the amount in controversy.

Fastcase to liquidated damages of at least $20,000.[6]  Although the exact quantum of liquidated liability Fastcase might accrue is necessarily unclear, it certainly is not the case that this claim presents "no estimate of damages to which a court may defer."  *Id.* at 1357.  To provide an up-to-date copy of the Georgia Regulations to its customers, Fastcase alleges that it will violate Lawriter's Terms of Use "at least daily, and possibly thousands of times every day, depending on how many members access Fastcase's Georgia Database."  Because violating these terms as few as four times would subject Fastcase to a threat of liability in excess of $75,000, we conclude that Fastcase's potential liability was not too speculative to satisfy the amount-in-controversy requirement.

2.

The District Court also concluded that the jurisdictional minimum was not satisfied because Fastcase's potential liability could not be used as a basis for satisfying the amount-in-controversy requirement.  In reaching this conclusion, the District Court relied on two district court opinions that, in turn, relied on our explanation in *Cohen v. Office Depot, Inc.* that "the value of the requested injunctive relief [in determining the amount in controversy] is the monetary value

---

[6] In its brief, Lawriter suggests that the liquated damages clause of its Terms of Use might not apply "per occurrence"—that is, that Fastcase might only face $ 20,000 in liquidated damages for repeatedly violating the Terms of Use.  Appellee's Br. at 22.  But Lawriter does not commit itself to this position, nor is it clear from the Terms of Use that the liquated damages clause does not apply per occurrence.  For these reasons, we conclude that the *potential* liability Fastcase faces from violating the Terms of Use accrues per occurrence.

13

of the benefit that would flow to the plaintiff if the injunction were granted." 204 F.3d at 1077. It is unclear how the District Court read this language to exclude Fastcase's potential liability from the amount-in-controversy calculus—presumably, it read the word "benefit" to exclude potential liability. Whatever the reason, this conclusion is neither suggested by *Cohen* nor consistent with Eleventh Circuit precedent.

First, *Cohen* was not concerned with the question of whether potential liability could be used to determine the amount in controversy. Instead, this Court in *Cohen* concluded that the amount in controversy was not satisfied because the value of the plaintiffs' injunctive relief was too speculative. *Id.* Far from creating new doctrine, the language from *Cohen* that the District Court relied on here was meant simply to restate the plaintiff-viewpoint rule that this Court adopted[7] in *Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Electronics, Inc.*[8] That rule requires that courts, in determining the amount in

---

[7] To be clear, the view of this Court in *Ericsson* was that the former Fifth Circuit had already adopted the plaintiff-viewpoint rule. *Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 120 F.3d 216, 219 (11th Cir. 1997). Our opinion in *Ericsson* simply made this explicit.

[8] This is plainly true when one views the quote from *Cohen* in context:

> When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective. *In other words*, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted.

*Cohen*, 204 F.3d at 1077 (emphasis added) (citations omitted).

14

controversy, "measure the value of the object of litigation solely from the plaintiff's perspective" rather than considering the value of the litigation from either the plaintiff's or defendant's perspective. *Id.* at 218. But it does not follow from the plaintiff-viewpoint rule that *the plaintiff's* potential liability cannot count toward the amount in controversy.

Moreover, this Court has previously considered a plaintiff's potential liability in determining the amount in controversy. In *Ericsson* we explained that while the amount in controversy can only be assessed from the plaintiff's perspective, "the plaintiff's claim for monetary damages need not, by itself, exceed the requisite statutory amount because *the immediate financial consequences* of the litigation to the plaintiff . . . [*e.g.*,] the financial benefit of not having to pay the interest contracted to be charged . . . may also be considered in calculating the amount in controversy." *Id.* at 220 (original emphasis omitted; emphasis added). Decisions of the former Fifth Circuit amply support this view.[9] And while many

---

[9] *See, e.g.*, *Duderwicz v. Sweetwater Sav. Ass'n*, 595 F.2d 1008, 1014 (5th Cir. 1979) (recognizing that former Fifth Circuit cases "seem to support the proposition that the value of the matter in controversy is measured not by the monetary judgment which the plaintiff may recover, but by the judgment's pecuniary consequence"); *Stonewall Ins. Co. v. Lopez*, 544 F.2d 198, 199 (5th Cir. 1976) (per curiam) (concluding that the amount in controversy includes both the insurance company's potential liability and the costs associated with defending the underlying action against the insured); *Mut. Benefit Health & Accident Ass'n v. Fortenberry*, 98 F.2d 570, 571 (5th Cir. 1938) ("[O]bligations [plaintiff] may be compelled to pay in the future are not merely contingent and enter into the amount in controversy."); *N.Y. Life Ins. Co. v. Swift*, 38 F.2d 175, 176 (5th Cir. 1930) ("[T]he object to be gained by the bill is the test of the jurisdictional amount; in other words, the value of the right to be protected."). As decisions rendered by the former Fifth Circuit before close of business on September 30, 1981, these cases are precedential

15

of these older cases concern insurance companies' liability for contested policies,
the general principle they stand for applies to plaintiffs of all stripes.

Here, Fastcase must access the Georgia Regulations "at least daily, and
possibly thousands of times every day" to maintain a current database of Georgia
law.  Every time it accesses the Georgia Regulations, Fastcase exposes itself to
$20,000 of liquidated liability.  The "immediate financial consequence[]," *id.*,  of
the declaratory judgment Fastcase seeks is that it would no longer be subject to this
liability.  Consequently, we conclude that the amount-in-controversy requirement
is satisfied and diversity jurisdiction is proper.[10]

## IV.

We accordingly vacate the District Court's order and remand the case for
further proceedings not inconsistent with this opinion.

**SO ORDERED.**

---

in the Eleventh Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)
(en banc).

[10] Although we express no view on the matter here, the District Court on remand should
consider whether the Secretary is a required party under Rule 19.  The Secretary arguably has an
interest in these proceedings: under their contract, the Secretary is relieved of an entire $5,000
quarterly payment every time Lawriter sells a "complete set" of the Georgia Regulations.
Whether Fastcase's piecemeal copying of the Georgia Regulations threatens this interest such
that the Secretary is a required party is a determination we leave to the District Court.