[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-10366
Non-Argument Calendar
_____

D.C. Docket No. 1:19-cv-00111-JPB


ROBERT A. DOANE,

Plaintiff-Appellant,

versus

TELE CIRCUIT NETWORK CORPORATION,
ASHAR SYED,
in his Individual Capacity and in his Capacity
as Officer of Tele Circuit Network Corporation,
JOHN(S) AND OR JANE(S) DOE 1-100,
JOHN DOE(S) AND OR JANE DOES(S)
in their Individual Capacities and/or in their Capacities
as Officers or Employees of Tele Circuit Network Corporation,
XYZ COMPANIES 1-100,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(March 24, 2021)

Before JORDAN, NEWSOM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff Robert Doane filed suit in federal court against Tele Circuit Network Corporation and its sole owner Ashar Syed ("Defendants"), alleging that Defendants had unlawfully "spoofed" his phone number during a telemarketing campaign, causing Plaintiff to receive numerous angry calls from Defendants' prospective customers. After dismissing Plaintiff's federal claims for lack of standing, the district court declined to exercise supplemental jurisdiction over Plaintiff's Massachusetts state-law claims. As to those state-law claims, the court further ruled *sua sponte* that it lacked diversity jurisdiction to entertain the state-law claims because it was "clear" to the court that the amount-in-controversy requirement was not satisfied. After careful consideration, we vacate the district court's ruling and remand for further consideration as to whether diversity jurisdiction exists.

I.    BACKGROUND

In 2017, Plaintiff sued Defendants in the United States District Court for the District of Massachusetts.  Plaintiff alleged that, as part of an unlawful telemarketing scheme, Defendants had "spoofed" Plaintiff's name and cellphone number, making it appear to thousands of call recipients that Plaintiff was the caller.  According to Plaintiff, Defendant's conduct resulted in him receiving hundreds of angry and threatening calls from Defendant's prospective customers, many of whom were on the do-not-call registry.

Based on these allegations, Plaintiff asserted numerous claims arising under federal statutes, Massachusetts statutes, and Massachusetts common law.  Plaintiff alleged that the district court had federal-question jurisdiction over his federal claims and supplemental jurisdiction over his state-law claims.  He also alleged that diversity jurisdiction existed because "Plaintiff is a resident of a different state from each defendant," Massachusetts and Georgia, respectively, and "the value of the matter in controversy exceeds $75,000."  In a first amended complaint, Plaintiff realleged the same.

In 2018, Defendant Tele Circuit Network Corporation filed for Chapter 11 bankruptcy in the Northern District of Georgia, resulting in an automatic stay of the Massachusetts litigation.  The Bankruptcy Court then modified the automatic stay to permit Plaintiff to continue the lawsuit if he sought to transfer the case to

Georgia.  Accordingly, Plaintiff filed a motion to lift the stay and transfer the case to the United States District Court for the Northern District of Georgia, which the Massachusetts district court granted.

Following the transfer to the Northern District of Georgia, Plaintiff filed a second amended complaint.  Plaintiff asserted federal claims for violations of the Telephone Consumer Protection Act and the Truth In Caller ID Act.  He also asserted numerous state-law claims for violations of Massachusetts statutes regarding the unlawful use of blocking devices or services, identity fraud, violations of the right to privacy, unauthorized use of a person's name, and unlawful business practices.  Finally, Plaintiff asserted Massachusetts common law claims for defamation, trespass and nuisance, and intentional infliction of emotional distress.

Plaintiff alleged that Defendants caused him to suffer "severe emotional distress with physical manifestations" and "monetary losses" resulting in damages "exceed[ing] $75,000.00."  Specifically, Plaintiff alleged that he had previously been diagnosed with chronic pain and sleep disorders, and that, as a result of receiving angry and threatening calls, he had suffered "tension," "interference with sleep," "exacerbation of his chronic pain," "exacerbation of sleep disturbance," and "increased daytime somnolence, requiring him to increase his medications and supplements."  As for financial losses, Plaintiff alleged that he had incurred

4

"attorney fees," "wear and tear on his cellphone," "[cellphone] battery depletion and electricity used for recharge," and "the expense of software to track the calls of those angry callers." Plaintiff sought "actual, compensatory, and special damages to be determined at trial in an amount exceeding $500,000.00," "statutory damages of not less than $500 for each of the negligent violations of the [Telephone Consumer Protection Act], subject to trebling for knowing and willful violations thereof," "punitive damages . . . in the amount of not less than twice and up to three times his actual damages," and attorney's fees.

Defendants each filed a motion to dismiss the second amended complaint, arguing that it failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). The district court granted Defendants' motions to dismiss. The court first concluded that Plaintiff lacked standing to bring his federal claims. Accordingly, it dismissed those claims with prejudice. The court then *sua sponte* concluded that it lacked diversity jurisdiction over the remaining state-law claims because "it is clear to this Court that the amount in controversy requirement is not satisfied." Although the court noted that it had supplemental jurisdiction over the state-law claims, it declined to exercise that jurisdiction because discovery had not yet commenced and the claims would be best resolved by a state court. Accordingly, the district court dismissed Plaintiff's state-law claims without prejudice. This appeal followed.

5

## II.    DISCUSSION

On appeal, Plaintiff does not challenge the district court's dismissal of his federal claims or its decision not to exercise supplemental jurisdiction over the remaining Massachusetts state-law claims.  Instead, Plaintiff contends that the district court erred in determining that the amount-in-controversy requirement was not satisfied and thus that it lacked original jurisdiction under the diversity jurisdiction statute, 28 U.S.C. § 1332.[1]  Plaintiff further argues that the district court erred in *sua sponte* dismissing his state-law claims for lack of diversity jurisdiction without giving him notice and an opportunity to be heard on the matter.  Because the basis for the district court's conclusion that Plaintiff's claims did not satisfy the amount-in-controversy requirement is unclear and the court did not give the parties an opportunity to weigh in on whether the amount in controversy exceeded $75,000, we vacate the district court's dismissal and remand for further proceedings.

We review *de novo* a district court's dismissal of a complaint for lack of subject matter jurisdiction.  *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003).  The diversity jurisdiction statute grants original jurisdiction to district courts in cases where the parties are "citizens of

---

[1]  There is no dispute that the parties are diverse for purposes of 28 U.S.C. § 1332.  According to Plaintiff's pleadings, Plaintiff is a citizen of Massachusetts while Defendants are citizens of Georgia.

6

different States" and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1). Unlike the supplemental jurisdiction statute, which allows district courts to decline to exercise jurisdiction over state-law claims if certain conditions are met, 28 U.S.C. § 1367(c), exercising jurisdiction under the diversity jurisdiction statute "is not discretionary," *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 356 (1988).

"Ordinarily, a plaintiff need only plead an amount sufficient to satisfy the amount-in-controversy requirement in good faith." *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1342 (11th Cir. 2018). "The plaintiff's good-faith pleading will be second guessed only if it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* (alteration accepted) (quotation marks omitted). "However, when the plaintiff pleads an unspecified amount of damages, [he] bears the burden of proving by a preponderance of the evidence that the claim on which jurisdiction is based exceeds the jurisdictional minimum." *Id.*

Here, the district court's assertion that "it is clear to this Court that the amount in controversy requirement is not satisfied" does not indicate how the court reached its conclusion. The amount in controversy, however, was indeterminate because Plaintiff made no effort to quantify his damages. In conclusory fashion, Plaintiff merely speculated in his pleadings that his damages would "well exceed $75,000.00" because his actual, compensatory, and special damages "to be

7

determined at trial" would "exceed[] $500,000.00," and he was entitled to statutory damages, punitive damages, and attorney's fees. *See Federated Mut.*, 329 F.3d at 808–09 (holding that the damages the insured might recover for a bad-faith-failure-to-pay claim were "indeterminate" because the insured "ha[d] not placed any dollar amount on the various damages it [was] seeking" for that claim, and the insurer's speculation that damages would be "well in excess of $75,000" based on damages awards in other bad-faith cases did not render the amount in controversy determinate); *Fastcase*, 907 F.3d at 1339, 1343 (holding that the plaintiff's allegation that potential liability "exceeded $75,000" was "a claim for an indeterminate amount of damages" but that the plaintiff had carried his burden of showing that the amount-in-controversy requirement was satisfied based on a liquidated-damages provision). Accordingly, Plaintiff had the burden to prove by a preponderance of the evidence that the amount in controversy exceeded $75,000. *Fastcase*, 907 F.3d at 1342.

Although "a plaintiff must have ample opportunity to present evidence bearing on the existence of jurisdiction," *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1273 (11th Cir. 2000) (quotation marks omitted), the district court gave Plaintiff no chance to show that his claims exceeded the jurisdictional minimum. In their motions to dismiss, Defendants did not argue that Plaintiffs claims failed to satisfy the amount-in-controversy requirement, and the district court dismissed for

lack of diversity jurisdiction *sua sponte*, without allowing Plaintiff to weigh in on the issue.

While it may be true that Plaintiff's allegations regarding emotional distress and minor monetary loss do not credibly support his contention that he is entitled to "actual, compensatory, and special damages . . . in an amount exceeding $500,000.00," additional analysis is required to determine whether there is more than $75,000 is in controversy. "The determination of whether the requisite amount in controversy exists is a federal question; however, state law is relevant to this determination insofar as it defines the nature and extent of the right plaintiff seeks to enforce." *Broughton v. Fla. Int'l Underwriters, Inc.*, 139 F.3d 861, 863 (11th Cir. 1998) (alteration accepted) (quotation marks omitted). On appeal, Plaintiff argues that juries routinely award more than $75,000 based on lesser showings of emotional injury, and that he can recover treble damages and attorney's fees for each of his claims under the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ann. ch. 93A. *See Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294, 1299–1300 (11th Cir. 1999) (looking to state law to determine whether punitive damages were recoverable and thus could be counted toward the amount in controversy); *see also Federated Mut.*, 329 F.3d at 808 n.4 (noting that whether attorneys' fees count toward the amount in controversy depends upon whether they are provided for by statute or contract).

9

Defendant has not responded to these arguments and we decline to address them here. Instead, following briefing by the parties, the district court should determine in the first instance whether Plaintiff can show that the amount in controversy satisfies the jurisdictional minimum. We therefore vacate the district court's dismissal and remand for the court to further consider whether diversity jurisdiction exists over Plaintiff's state-law claims. *See Morrison*, 228 F.3d at 1273 (remanding to allow the plaintiffs an opportunity to show that the amount-in-controversy requirement was satisfied where the issue was first raised on appeal).

## III.    CONCLUSION

We vacate the district court's dismissal of Plaintiff's state-law claims and remand for the court to determine in the first instance whether Plaintiff can prove by a preponderance of the evidence that the amount in controversy exceeds $75,000 for purposes of diversity jurisdiction.[2]

**VACATED and REMANDED.**

---

[2] The district court's order dismissed Plaintiff's federal claims with prejudice. A dismissal for lack of standing, however, is a jurisdictional ruling that is entered without prejudice. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). Accordingly, on remand, the district court should reenter its dismissal order without prejudice as to the federal claims. *Id.* at 1234–35 (affirming the district court's dismissal for lack of standing but remanding for the court to dismiss the complaint without prejudice).