[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 21-12121

Non-Argument Calendar

————————————

AMERICAN HERITAGE LIFE INSURANCE COMPANY,

Plaintiff-Appellee,

*versus*

KIRK JOHNSTON,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:19-cv-00310-TJC-JRK

————————————

Before JORDAN, ROSENBAUM, and NEWSOM, Circuit Judges.

PER CURIAM:

A few years ago, Kirk Johnston sued American Heritage Life Insurance Co. in Texas, alleging that the insurer wrongfully refused to give him commissions for his solicitation of accounts with eight companies. After that case was voluntarily dismissed, American Heritage brought this declaratory judgment action, seeking a ruling that Johnston wasn't entitled to any commissions. The district court granted summary judgment in American Heritage's favor, and Johnston appealed. For the following reasons, we affirm.

I

American Heritage sells supplemental insurance policies to employers. If an employer chooses to offer these policies to its employees as part of its benefits package, it typically signs an agreement known as a "Form 4040" with American Heritage, which details the arrangement. Employees of the company can then opt into the supplemental insurance plans.

In 2017, Johnston began an approximately three-month stint working for West Harris County Insurance Associates (WHC), a small company owned by Odis Mack. WHC primarily sells Allstate Insurance Company policies, but it has been appointed to market American Heritage policies as well.

About halfway through his time with WHC, Johnston signed an Agent Agreement with American Heritage to "solicit,

procure and transmit" American Heritage policy applications. The Agent Agreement—which is governed by Florida law—states that Johnston would "not be entitled to compensation on any policy unless [American Heritage] determine[d], in its sole discretion, that [Johnston] was the efficient procuring cause of the policy." Johnston would "receive no compensation for premiums on insurance policies issued pursuant to applications procured by other producers." Nor would he receive compensation until premiums were paid on policies "issued pursuant to applications procured by [Johnston]." According to American Heritage, no policies were ever issued due to Johnston's efforts, so he was entitled to nothing.

Nonetheless, Johnston sued American Heritage in Texas state court, claiming that the company wrongfully denied him commissions for soliciting accounts with eight companies: (1) Winzer Corporation, (2) Control Flow, Inc., (3) Independent Marketing Alliance, (4) Ramco Erectors, (5) Lone Star College System, (6) Hewlett Packard, (7) Kroger Company, and (8) Energy Transfer Partners. After the suit was removed to federal court and transferred to Florida, Johnston voluntarily dismissed his claims.

American Heritage then sought a declaratory judgment in Florida district court, providing that it wasn't liable to Johnston for commissions related to any of these eight companies. Following more than a year of discovery, American Heritage moved for summary judgment. Its Director of Commissions, Licensing and Contracting submitted a supporting affidavit averring that—with the exception of Energy Transfer—American Heritage "ha[d] not

issued any insurance policies to employees of these companies as a result of any workplace products offered through or approved by these companies." Similarly, American Heritage's Senior VP of Administration declared that none of those seven companies had submitted "any employer insurance application or request."

As to Energy Transfer, American Heritage noted that it had listed Gallagher Benefit Services as its agent of record since 2011— well before Johnston's tenure. Johnston did not submit any Form 4040 or insurance applications from Energy Transfer or its employees. Nor did Energy Transfer ever request to change its agent of record from Gallagher. Thus, American Heritage concluded that "no insurance policies were issued by [it] pursuant to applications procured by Johnston."

The district court granted summary judgment for American Heritage, holding that the company "does not have any obligation or liability to [Johnston] for commissions or compensation." Johnston timely appealed.

## II

"We review *de novo* a district court's order granting summary judgment, viewing all evidence in favor of the nonmoving party." *Gelber v. Akal Sec., Inc.*, 14 F.4th 1279, 1282 n.2 (11th Cir. 2021). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

As to the first six companies for which Johnston claims he is owed commissions, the district court determined that the undisputed evidence shows that American Heritage hadn't sold policies to them or their employees.  This conclusion is well supported by the record.  It is also clear that Johnston cannot be an "efficient procuring cause"—and thereby be eligible for commissions—where no policies were ever issued.  He admitted as much in his deposition.  On appeal, Johnston doesn't point to any evidence that might contradict the district court's finding.  And that is fatal to his claim with respect to these companies.  *See Kahn v. Am. Heritage Life Ins. Co.*, 134 So. 3d 978, 979 (Fla. Dist. Ct. App. 2012).  It is Johnston's burden "to show that specific facts exist that raise a genuine issue for trial."  *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017).  He has not met that burden here.

Turning to Kroger, the parties dispute whether an account with the grocery company was ever established.  American Heritage points out that two of its executives declared that there was simply no Kroger account, and Johnston admitted that he never got beyond an introductory phone call with Kroger.  In response, Johnston submitted an affidavit stating that he "found out" that "a business relationship was formed with Kroger," because when he called Mack asserting this belief, his former boss allegedly said, "I think the benefits group went and finished your deal."

Johnston's argument is unavailing.  "An affidavit or declaration used to support or oppose a motion [for summary judgment] *must be made on personal knowledge*, set out facts that would be

admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4) (emphasis added); *see also Corwin v. Walt Disney World Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007) ("Even on summary judgment, a court is not obligated to take as true testimony that is not based upon personal knowledge." (quotation omitted)). In his affidavit, Johnston does not purport to have personal knowledge that—contrary to the sworn declarations of two of its executives—American Heritage eventually closed a deal with Kroger. Nor can Johnston rely on Mack's purported hearsay statement as to what he "th[ought]" to create a genuine issue of material fact. This statement of a third party, "presented as a belief without any basis in ascertainable fact, was not the type of admissible evidence required to survive a motion for summary judgment." *Josendis v. Wall to Wall Residence Repairs Inc.*, 662 F.3d 1292, 1318 (11th Cir. 2011) (quotation marks omitted); *see also Ellis v. England*, 432 F.3d 1321, 1327 (11th Cir. 2005) ("[M]ere conclusions and unsupported factual allegations, as well as affidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for summary judgment."). Thus, Johnston hasn't proffered any admissible evidence to support his claim that he is entitled to commissions for his efforts to land Kroger. His preliminary interactions did not result in the issuance of any policies to Kroger employees.[1]

---

[1] Indeed, even accepting Johnston's speculation that American Heritage opened an account with Kroger, we note that "there was no express

Last, we address Johnston's claim as to Energy Transfer. Here, too, we agree with the district court that no "reasonable jury could" conclude that Johnston was the efficient procuring cause of any policies. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   Although Energy Transfer offered American Heritage products to its employees, it is undisputed that another agency—Gallagher—"found and recommended" the products for Energy Transfer in 2011.  Johnston conceded in his deposition that he was not "entitled to commissions on policies that Gallagher had procured from the Energy Transfer employees."  And Energy Transfer's Senior VP of HR—who administered the company's benefits—testified that Gallagher served as the agent of record "since 2011, and they continue to be the agent of record today."  Gallagher's primary contact for the account testified to the same effect: Gallagher, not Johnston, was always the agent of record.

contractual provision allowing commissions for procuring an *account*." *Kahn*, 134 So. 3d at 979.  Instead, the Agent Agreement provided that Johnston would receive commissions only "on premiums paid in cash to [American Heritage] on insurance *policies* . . . issued pursuant to applications procured by [Johnston]."  The agreement further stated that Johnston would "not be entitled to compensation on any *policy*" unless American Heritage determined that he "was the efficient procuring cause of the *policy*."  This contractual language is materially identical to that which the Florida Court of Appeal faced in *Kahn v. American Heritage*.  And just as in that case, "[t]he record is devoid of any evidence that appellant procured any *policies* from [Kroger] employees or members." *Id.*  Because there is no evidence that such policies were issued—or that any corresponding premiums were paid—Johnston has no claim for commissions.

Gallagher, not Johnston, procured the Energy Transfer policies and serviced them. And Gallagher, not Johnston, was entitled to commissions.

To be sure, Johnston tried to become Energy Transfer's agent of record. Specifically, he claims to have had a call with Energy Transfer's CFO in 2017 regarding American Heritage products. But Johnston admitted that he never sent Energy Transfer a pricing proposal, never had any face-to-face meetings with Energy Transfer executives, never met with Energy Transfer employees to procure applications for insurance, and never discussed several key pieces of information regarding Energy Transfer's current arrangement. As with Kroger, the evidence shows that Johnston never got past the initial phone call. Simply put, his preliminary efforts do not entitle him to commissions under the Agent Agreement.

Johnston responds by pointing to his own affidavit, wherein he professed his "understanding" that Energy Transfer's CFO had "authorized [Johnston] becoming agent of record."[2] The district court disregarded these statements, reasoning that they were based only on Johnston's speculation and inadmissible hearsay. Johnston does not meaningfully confront the district court's reasoning on appeal. He does not explain why the district court should have considered the hearsay in his affidavit. Nor does he provide any

_____

[2] Johnston conceded in his deposition that he had nothing in writing to support this assertion. And he submitted nothing but his affidavit to oppose summary judgment.

specific basis for equating his "understanding" with personal knowledge that he was ever made the agent of record. Instead, Johnston simply recites the same evidence that the district court held was inappropriate for consideration at summary judgment. By failing to explain how he believes the district court erred, Johnston has abandoned any argument that the court should have considered his alleged understanding in its ruling. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). "It follows that the district court's judgment is due to be affirmed." *Id.* at 683. Johnston offers no other evidence that might suggest he was the efficient procuring cause for any Energy Transfer policies. Absent such evidence, there is no genuine issue of material fact, and the grant of summary judgment was proper.

## III

Johnston separately contends that the district court should have modified its scheduling order so that he could reopen discovery and amend his answer to pursue a counterclaim. Under the Federal Rules of Civil Procedure, a district court's "scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). Once entered, the scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). We review a district court's decision to enforce a scheduling order and deny amendments to the pleadings only for abuse of discretion. *Romero v. Drummond Co.*, 552 F.3d 1303, 1314 (11th Cir. 2008).

There was no abuse of discretion here.  First, as the court explained, Johnston had full knowledge of his proposed claims no later than 2018, when he filed his complaint in Texas.  In fact, Johnston represented in his motion that he "believed from the beginning that commissions were due."  Second, Johnston "had over a year to request discovery" and to seek the information that he complained was in American Heritage's possession.  Knowing all along that he might have a counterclaim related to American Heritage's alleged dealings with Kroger and Energy Transfer, Johnston "lacked diligence in pursuing [this] claim."  *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 (11th Cir. 2009).  Finally, the court found that an extension would prejudice American Heritage, as it had already taken several depositions, completed discovery, and filed a motion for summary judgment.  Modifying the scheduling order would have forced American Heritage to repeat many of these efforts.  In light of these considerations—particularly Johnston's lack of diligence—we see no abuse of discretion on the district court's part.  *See Sosa v. Airprint Sys.*, 133 F.3d 1417, 1419 (11th Cir. 1998).[3]

---

[3] In a final Hail Mary, Johnston contends that the district court's denial of leave to file a counterclaim rendered this case moot.  This argument is puzzling to say the least.  There is no requirement that a declaratory judgment defendant formally pursue an action or assert a claim before the plaintiff may obtain relief.  *See Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1340 (11th Cir. 2018); 10B Wright & Miller, *Fed. Prac. & Proc.* § 2751 (4th ed., Apr. 2021 Update). And "a case 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'"  *Chafin v. Chafin*, 568 U.S.

21-12121                Opinion of the Court                          11

★  ★  ★

We **AFFIRM**.

---

165, 172 (2013) (quoting *Knox v. Service Employees*, 567 U.S. 298, 307 (2012)). The district court provided effectual relief here by entering a declaratory judgment in American Heritage's favor.